**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Derek Dion CURTIS,
Defendant–Appellant.**

No. 90–5317.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1990.

Decided June 4, 1991.

Anthony Reed Gallagher, Asst. Federal Public Defender, argued, Baltimore, Md. (Fred Warren Bennett, Federal Public Defender, on the brief, Baltimore, Md.), for defendant-appellant.

Carmina Szunyog Hughes, Asst. U.S. Atty., argued, Baltimore, Md. (Breckinridge L. Willcox, U.S. Atty., on the brief, Baltimore, Md.), for plaintiff-appellee.

Before WIDENER, Circuit Judge, and BUTZNER and CHAPMAN, Senior Circuit Judges.

WIDENER, Circuit Judge:

Derek Dion Curtis appeals the sentence imposed by the district court following his conviction by a jury of falsely impersonating an officer of the United States, in violation of 18 U.S.C. § 912. Curtis contends that the district court's finding that he was an organizer or manager, as well as a planner, was erroneous and resulted in double counting. He also asserts that the court improperly denied his request for a reduction based on acceptance of responsibility. We find no error and affirm.

In April 1988, Curtis obtained a picture identification badge with a Department of Justice seal and the words "Immigration

and Naturalization Service" (INS) printed on it while working in an area of a private hospital where Cuban boat lift patients were housed. When Curtis left his employment, a few weeks after he began, he reported to the personnel office that he had lost his badge and therefore could not return it as required.

During the summer of 1988, Curtis moved into a house in Catonsville, Maryland. While wearing his identification badge, Curtis told one of his neighbors that he was the Regional Director of the INS. On December 13, 1988, Curtis approached a saleslady at a furniture store in Catonsville and indicated that he had just moved into the area and needed to furnish his house. He selected a number of pieces of furniture. The saleslady contacted the sales manager to get a price on the selected furniture. During this conversation the store employees were led to believe that Curtis worked for the federal government and the furniture would be paid for by the government. Later, a woman purporting to be Karen Smith called the owner of the store and stated that Curtis was a special agent with the INS, the government would pay for the furniture, and Curtis would show the furniture store employees an identification establishing that Curtis was still employed.

On December 15, Curtis returned to the furniture store. He wore soft casts on his arm and leg and walked with crutches. He explained that he sustained his injuries chasing a suspect and then displayed his identification badge. The furniture store personnel then agreed to deliver the furniture to Curtis' house on December 16. Both Curtis and Karen Smith led the individuals at the furniture store to believe that more agents would be moving into the area and that the store might be able to supply furniture to them.

The furniture store owner later decided not to deliver the furniture without a written guarantee. When the furniture was not delivered, both Curtis and Karen Smith called the furniture store and asked why the furniture had not been delivered. An-other individual, identifying himself as George Rochus, called the store and indicated that a purchase order would be forthcoming. Later that day, Curtis produced a letter from Rochus and a blank purchase order on Systems Analysis and Management letterhead. Curtis explained that Systems Analysis and Management was the financial arm of the Justice Department. The corporation was, in fact, created by Curtis in July of 1988.

Curtis selected additional furniture which increased the total to over $3,000.00. The furniture was delivered on December 23, 1988. Payment was never received and the furniture was recovered from Curtis' house on January 19, 1989. At that time, the identification badge was found in Curtis' possession.

Because Curtis' impersonation was used to facilitate theft, the base offense level was four. U.S.S.G. § 2J1.4(c) and § 2B1.1(a).[1] Three levels were added because the offense involved a loss of over $2,000.00. U.S.S.G. § 2B1.1(b). Two levels were added for more than minimal planning under U.S.S.G. § 2B1.1(b)(4) and two levels were added under U.S.S.G. § 3B1.1(c) for being a manager or organizer. Therefore, his offense level for sentencing was eleven. Curtis' criminal history category was VI. The sentencing table prescribed 27 to 33 months' imprisonment. The court sentenced Curtis to the maximum amount, 33 months.

■ Curtis first challenges the district court's finding that he was an organizer or manager.

The Introductory Commentary to the Guidelines states that § 3B1.1 may apply "[w]hen an offense is committed by more than one participant." U.S.S.G. § 3B1.1 (Introductory Commentary). A participant is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, Application Note 1. Curtis argues that no evidence was presented from which the court could conclude that anyone else was criminally involved in the

---

1. Unless otherwise noted, all references are to the 1989 Sentencing Guidelines.

matter. However, Curtis admitted that he had two friends pose as government officers or agents using the names Karen Smith and George Rochus. Smith and Rochus actively participated in Curtis' fraudulent scheme by posing as government agents; therefore, Rochus and Smith each fit the definition of a participant.

■ "A determination by the district court of a defendant's role in the offense is a factual determination and is thus reviewable under the clearly erroneous standard." *United States v. Smith,* 914 F.2d 565, 569 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991). Curtis exercised authority over Smith and Rochus. He also kept the fruits of the crime. Based on the above findings, we can not say that the district court was clearly erroneous in increasing Curtis' offense level by two for being a manager or organizer.

Curtis does not contest the court's two-point upward adjustment for "more than minimal planning." U.S.S.G. § 2B1.1(b)(4). However, he argues that the application of both § 2B1.1(b)(4), for more than minimal planning, and § 3B1.1(c), as organizer or manager, amounts to impermissible double counting because the same facts were used in making both adjustments.

The Sentencing Guidelines are explicit when double counting is forbidden. For example, the Application Notes to sections 3A1.1, 3A1.2, and 3A1.3 clearly provide that an offense level increase based on specific conduct is not permitted if the offense guideline already takes into account that same conduct. See *United States v.*

*Rocha,* 916 F.2d 219 (5th Cir.1990). "Under the principle of *expressio unius est exclusio alterius,* the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded." *United States v. Rocha,* 916 F.2d at 243 (citing *United States v. Vickers,* 891 F.2d 86, 88 (5th Cir.1989)). Also, and of greater consequence, an Application Note to Part B—General Application Principles, states: "The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." Application Note 4. Following those principles, we conclude that the exclusion of a double counting provision in the sections involved here was by design. If conduct falls within the applicable definitions, then it is appropriate to increase the offense level for each enhancement.

■ Applying that rule, there was no double counting in this case.[2] The presentence report, adopted by the district court, stated, "The offense involved more than minimal planning in that it was carried out over time, involved deliberate deception, and occurred after several contacts between the defendant, victim, and others, both in person and by telephone." Curtis' use of Smith and Rochus was just one of the elements relied on by the court in finding more than minimal planning. On his own, Curtis set up the corporation used in committing the crime, he obtained and did not return the identification badge, and he

---

**2.** The appellant's reliance on *United States v. Werlinger,* 894 F.2d 1015 (8th Cir.1990), is misplaced. Over the course of ten years of employment, Werlinger embezzled over $600,000.00. When he noticed the bank's internal auditor preparing to conduct a surprise cash audit, he asked one co-worker to falsely report the amount of cash on hand and another co-worker to make a false ledger entry. Neither worker complied with Werlinger's request and his crime was discovered. The bank notified law enforcement personnel the next day. Werlinger admitted the theft to the FBI, and cooperated with the investigation. *Werlinger* at 1016. The Eighth Circuit held that it was error to add two points for willfully obstructing or impeding pro-

ceedings, U.S.S.G. § 3C1.1 (1989), based on conduct undertaken in committing the crime of embezzlement. The court rejected the government's argument that "even though the FBI remained completely unaware of the bank's suspicions of embezzlement until [the day after the surprise audit], Werlinger's actions on [the day of the audit] were 'calculated to deceive or mislead' the FBI." *Werlinger* at 1017. The court held that Werlinger's conduct did not fit in the guideline's definition of "obstruction of justice." The court made clear that had Werlinger's actions met the guideline definition of "obstruction of justice" the offense level increase would have been upheld.

visited the store on more than one occasion. These actions alone, without the involvement of Smith and Rochus, would have amounted to more than minimal planning. Therefore, it was permissible to award a two-level increase for more than minimal planning as well as a two-level increase for being an organizer or manager.

Curtis' final argument is that the court erroneously denied him a two-level reduction for acceptance of responsibility.

 Section 3E1.1 provides for a two-level reduction in base offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1(a). "The determination of whether a defendant 'clearly demonstrates a recognition and affirmative acceptance of personal responsibility' is a factual issue, and the district court's decision not to reduce the offense level will not be disturbed unless clearly erroneous." *United States v. Harris*, 882 F.2d 902, 905 (4th Cir.1989).

At the sentencing hearing, the court stated "he can't wait until now" to accept responsibility. The court also stated that "[t]he fact that he would have departed from these premises and not gone back to Spring Grove, and leaving law enforcement authorities to have to find him and bring him back here, hardly indicates that he's begun to accept responsibility as of sometime last week, anyway. So under all those circumstances ... there will not be a two point reduction."

Curtis contends that the district court erred in ruling that Curtis' statement was too late and therefore not allowing the reduction. However, the "timeliness of the defendant's conduct in accepting responsibility is a consideration." *United States v. Gordon*, 895 F.2d 932, 937 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). The Commentary specifically states that a reduction in sentence is appropriate when a defendant indicates his acceptance of responsibility "in a timely fashion...." U.S.S.G. § 3E1.1, Commentary, *Background.* Also, an application note states that one of the appropriate considerations used in determining whether a defendant qualifies for the two-point reduction is "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, Application Note 1(g). Thus, the guidelines make clear that the district court's consideration of the timing of Curtis' conduct in denying a reduction for acceptance of responsibility was proper. In addition, the court also relied on the fact that after an aborted earlier sentencing hearing, Curtis absconded from Spring Grove State Hospital. An arrest warrant was issued and Curtis was subsequently arrested. The decision of the district court to deny Curtis a two-level decrease for acceptance of responsibility was not clearly erroneous.

The sentence appealed from is accordingly

AFFIRMED.