976 F.2d 728
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
John I. ROGERS, III, Defendant-Appellant.
 No. 92-5064.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 19, 1992
Decided: September 29, 1992
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Falcon B. Hawkins, Chief District Judge. (CR-91-7)
 ARGUED: Arthur Camden Lewis, Lewis, Babcock & Hawkins, Columbia, South Carolina, for Appellant.
 John Michael Barton, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 ON BRIEF: John S. Simmons, United States Attorney, Columbia, South Carolina, for Appellee.
 D.S.C.
 Affirmed in part and dismissed in part.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 John I. Rogers, III appeals the sentence imposed on his conviction on one count of violating 18 U.S.C. § 1952(c). We find no error in the district court's application of the sentencing guidelines, and we affirm. We also dismiss the appeal of the district court's refusal to depart downward.
 
 I.
 
 2
 Rogers, the former speaker pro tempore of the South Carolina House of Representatives, was ensnared along with numerous others as part of the "Operation Lost Trust" FBI sting. Ron Cobb, a registered lobbyist recruited by the FBI to help in the sting, offered Rogers $5,000 for assistance in getting parimutuel betting legislation passed and $20,000 more if the bill actually passed during the 1990 legislative session. Rogers accepted an initial payment of $3,000, and he directed Cobb to make subsequent payments to one Ronald Crow. All told, Cobb paid $5,000 during the 1990 legislative session. Rogers was unsuccessful in obtaining passage of the bill.
 
 
 3
 In the 1988, 1989, and 1990 legislative sessions, Rogers had also extorted a total of $13,500 from another lobbyist, Ken Kinard, in return for help in obtaining passage of bills. After news of the FBI sting operation became public in mid-1990, Rogers met with Kinard and his wife to discuss what to do if any of them were questioned by the FBI. They agreed that they would say that the payments were fees for legal work performed by Rogers.
 
 
 4
 Rogers was indicted for racketeering, extortion and obstruction of justice. Under the terms of a plea agreement, he pleaded guilty to a single racketeering count. The government agreed to move for a downward departure under U.S.S.G. § 5K1.1 if Rogers complied with the terms of the agreement. The district court calculated Rogers' total offense level as 23:
 
 
 5
 (1)base offense level (§ 2C1.1(a)) -10 (2)special offense characteristics -more than one bribe (§ 2C1.1(b)(1)) -k2 -bribe to influence elected official (§ 2C1.1(b)(2)(B))-k8 (3)adjustment for role in offense -manager/supervisor of 5 or more persons (§ 3B1.1(b)) k3 (4)adjustment for obstruction of justice k 2 (§ 3C1.1) (5)acceptance of responsibility (§ 3E1.1) -2 TOTAL OFFENSE LEVEL 23
 
 
 6
 This offense level, combined with a criminal history score of I, yielded a guideline range of 46-57 months. The district court denied the government's § 5K1.1 motion and sentenced Rogers to 46 months. Rogers appeals the sentence.
 
 II.
 
 7
 The first issue raised by Rogers involves the proper interpretation of U.S.S.G. § 2C1.1(b) (Nov. 1989):[1]
 
 
 8
 (b)Specific Offense Characteristics
 
 
 9
 (1)If the offense involved more than one bribe, increase by 2 levels.
 
 
 10
 (2)(If more than one applies, use the greater):
 
 
 11
 (A)If the value of the bribe or the benefit received, or to be received, in return for the bribe exceeded $2,000, increase by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).
 
 
 12
 (B)If the offense involved a bribe for the purpose of influencing an elected official or any official holding a high level decisionmaking or sensitive position, increase by 8 levels.
 
 
 13
 The Commentary that was in effect between November 1, 1989 and October 31, 1990, provided as follows:
 
 
 14
 Under § 2C1.1(b)(2)(B), if the bribe is for the purpose of influencing an official act by certain officials, the offense level is increased by 8 levels if this increase is greater than that provided under § 2C1.1(b)(1).
 
 
 15
 U.S.S.G., Guidelines Manual, § 2C1.1, comment. (backg'd.) (Nov. 1989). In the Guidelines Manual issued in October 1990, which contained the amendments effective November 1, 1990, the final citation in the commentary quoted above was changed froms 2C1.1(b)(1) to § 2C1.1(b)(2)(A).
 
 
 16
 Rogers argues that the guideline itself, apart from the commentary, is ambiguous with regard to whether the 8-level increase in (b)(2)(B) may be cumulative to the 2-level increase in (b)(1), and that recourse to the commentary resolves this ambiguity in Rogers' favor. Even if we disregard that the commentary in the November 1989 edition contained an obvious typographical error,[2] Rogers still has to convince us that the text of § 2C1.1(b) is sufficiently ambiguous to even prompt us to look further. We find no ambiguity.
 
 
 17
 The "General Application Principles" section of the guidelines prescribes the following general rule: "apply any specific offense characteristics ... in the order listed." U.S.S.G. § 1B1.1(b). The Application Notes add the following explanation:
 
 
 18
 4.The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used. Within each specific offense characteristic subsection, however, the offense level adjustments are alternative; only the one that best describes the conduct is to be used. [examples omitted]
 
 
 19
 U.S.S.G. § 1B1.1, comment. (n.4) (1990). Under this rule of application, the calculations under § 2C1.1(b) are straightforward, and no resort to the commentary is necessary. The district court correctly added the adjustments under each of the special offense characteristics in § 2C1.1(b).
 
 III.
 
 20
 The district court also added two offense levels for Rogers' role in the offense, pursuant to U.S.S.G. § 3B1.1(b). Rogers complains that the offense of conviction necessarily encompasses his role as a member and Speaker Pro Tem and, therefore, the role in the offense adjustment amounts to double counting.[3] His argument is without merit.
 
 
 21
 Rogers does not contest the factual determinations that he was a supervisor of fairly extensive criminal activity. There is little doubt that his leadership position in the legislature enabled him to wield significant influence over individual legislators. However, the "doublecounting" of which Rogers complains is not proscribed by the guidelines. Only if a specific guideline expressly forbids taking the same conduct into account twice is such "double-counting" forbidden. See United States v. Curtis, 934 F.2d 553, 556 (4th Cir. 1991) ("The Sentencing Guidelines are explicit when double counting is forbidden.") Because there is no explicit prohibition against"double-counting" under these circumstances, we find no error.
 
 IV.
 
 22
 The two-level increase for obstruction of justice resulted from Rogers' agreement with the Kinards to conceal the true nature of the payments to Rogers. The Commentary to § 3C1.1 (1990) provided:
 
 
 23
 This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial pro ceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense.
 
 
 24
 Rogers reiterates essentially the same arguments about doublecounting as he makes with regard to the role in the offense adjustment. His argument falls short again.
 
 
 25
 Rogers argues that his on-going efforts to conceal his crime were part and parcel of the overall racketeering activity for which he was convicted. He relies on United States v. Werlinger, 894 F.2d 1015 (8th Cir. 1990), for the proposition that concealment activities may be encompassed by the crime itself and thus are not subject to the enhancement. Werlinger, however, dealt with attempts to mislead a non-governmental bank auditor, rather than law enforcement officials. Moreover, when Werlinger's allegedly obstructive conduct occurred, he was unaware that any official investigation was taking place (in fact, none was). The critical differences from the instant case are that Rogers took affirmative steps after learning of the investigation at the statehouse, and the deceptive conduct was intended to mislead governmental "authorities." We hold that the district court did not err in assessing two levels for obstruction of justice.
 
 V.
 
 26
 Rogers' sole assistance to the government was his testimony at the trial of a state judge who was also snared in Operation Lost Trust. This testimony consisted of Rogers' explanation about how the legislative judicial selection process worked. The district court denied the government's motion for a § 5K1.1 substantial assistance departure because it believed that Rogers' testimony was neither substantial nor the type of assistance contemplated by the guidelines. Rogers appeals on the grounds that the district court erroneously believed that it was without authority to depart. We believe that this argument misconstrues the district court's decision.
 
 
 27
 Appeals from refusals to depart are severely circumscribed. One broad category of allowable appeals involves refusals based on the district court's erroneous belief that it did not have authority to depart. United States v. Bayerle, 898 F.2d 28 (4th Cir. 1990), cert. denied, 111 S. Ct. 65 (1990). Nothing in the record indicates that the court misapprehended its authority to depart. The court's decision was merely based on an evaluation of Rogers' assistance. The testimony was generic and not at all tied to Rogers' criminal activities. In essence, the assistance provided was free expert-witness testimony of a sort available from any number of legislators. We have no jurisdiction to review a district court exercise of its discretion under these circumstances. United States v. Graham, 946 F.2d 19, 22 (4th Cir. 1991).
 
 AFFIRMED IN PART AND DISMISSED IN PART
 
 
 [1]
 The count to which Rogers pleaded guilty encompassed racketeering activities over a period of more than two years, beginning in 1988 and continuing through much of 1990. He was indicted on January 4, 1991, and sentenced on January 8, 1992. Rogers' first argument depends on an interpretation of language that only appears in the 1989 edition of the Guidelines Manual, and the government does not argue for application of a later edition. The guidelines in effect on the date of sentencing are normally used by the court in determining the sentence. See 18 U.S.C. § 3553(a)(4). However, the guidelines in effect in January 1992 (the November 1991 edition) have the effect (according to Rogers) of increasing his sentence. We assume, without deciding, that the November 1989 edition of the guidelines applies here. See United States v. Morrow, 925 F.2d 779 (4th Cir. 1991) (holding that amendments to the guidelines that become effective after commission of the offense of conviction may not be used to increase a sentence)
 
 
 [2]
 In the original version of the guidelines, the choice was clear:
 (b)Specific Offense Characteristics Apply the greater:
 (1)If the value of the gratuity exceeded $2,000, increase by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).
 (2)If the gratuity was given, or to be given, to an elected official or any official holding a high level decision-making or sensitive position, increase by 8 levels.
 U.S.S.G., Guidelines Manual, § 2C1.1(b) (1987). The Commentary stated the obvious:
 Under § 2C1.1(b)(2), if the bribe is for the purpose of influencing an official act by certain officials, the offense level is increased by 8 levels if this increase is greater than that provided under § 2C1.1(b)(1).
 The current version of § 2C1.1(b) became effective on November 1, 1989. See U.S.S.G. App. C, amend. 121. In an obvious oversight, the related commentary was not amended as well. See § 2C1.1, comment. (backg'd) (Nov. 1989). In the next edition of the Guidelines Manual, however, the commentary was changed (without explanation) to its current version. See § 2C1.1, comment. (backg'd) (Nov. 1990).
 
 
 [3]
 "Racketeering activity" includes, inter alia, "any act ... involving ... bribery ... which is chargeable under State law...." 18 U.S.C. § 1961(1). S.C. Code Ann. § 16-9-220 (Law. Co-op. 1976). While his position as Speaker may have facilitated the commission of his crimes, it was by no means an element of such crimes