60 F.3d 826
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin L. STODDARD, Defendant-Appellant.
 No. 94-5365.
 United States Court of Appeals, Fourth Circuit.
 Submitted: January 10, 1995.
Decided: July 7, 1995.
 
 Richard Butchok, Baltimore, MD, for Appellant. Lynne A. Battaglia, United States Attorney, W. Warren Hamel, Assistant United States Attorney, Baltimore, MD, for Appellee.
 Before HALL, WILKINSON, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Kevin L. Stoddard pled guilty to two counts of bank robbery, 18 U.S.C.A. Sec. 2113(a), (f) (West Supp.1994), 18 U.S.C. Sec. 2 (1988). A sentence of 115 months was imposed, which he appeals on the ground that the district court failed to give him an adjustment for acceptance of responsibility. United States Sentencing Commission, Guidelines Manual, Sec. 3E1.1 (Nov.1993). We affirm.
 
 
 2
 Stoddard was arrested on October 12, 1993, when a dye pack exploded over him just after he robbed the Equitable Federal Savings Bank in Wheaton, Maryland, and he was apprehended by employees of a nearby store. Not surprisingly, Stoddard admitted robbing the bank. He also admitted robbing the same bank on September 16, 1993, and robbing the Citizens Bank of Maryland on September 24, 1993. He identified his cousin, Kenneth Scott, as the person who drove him to the bank on September 24, and drove him away afterward.
 
 
 3
 Stoddard was charged with all three robberies. On December 16, 1993, Stoddard appeared in a line-up and afterward was briefly questioned in the presence of his attorney by the Assistant U.S. Attorney and Federal Bureau of Investigation Agent Doris Hepler. In this interview, Stoddard said that when Scott drove him to the bank on September 24, Scott knew he was going to rob the bank. Stoddard signed a plea agreement the same day in which he agreed to plead guilty to the September 24 robbery (Count Two) and the October 12 robbery (Count Three), and to give truthful testimony in court if requested. In return, the government promised to dismiss Count One (the September 16 robbery), move for a substantial assistance departure, and recommend a sentence at the low end of the guideline range. The agreement also stipulated that Stoddard should get a three-level adjustment for acceptance of responsibility.
 
 
 4
 On February 10, 1994, Stoddard again met with the government attorney and agent Hepler in preparation for Scott's trial on charges of aiding and abetting the September 24, 1993, robbery. This time his attorney was not present. The government and Stoddard later gave different accounts of what Stoddard said during the meeting. At Scott's trial on February 16, 1994, Stoddard testified that on September 24 he called Scott and said he could offer him some money for a ride to the bank. Stoddard said Scott questioned him on the way to the bank, and that he told Scott, "I have a friend on the inside of the bank that is going to help me with the money. I didn't say I was going to do any bank fraud or do any bank robbery.... He had no knowledge of what is going on."
 
 
 5
 Although the government called agent Hepler to the stand to testify that Stoddard had previously said he told Scott he was going to rob the bank, Scott was acquitted. The government subsequently moved to be released from its obligations under the plea agreement. It submitted transcripts from the Scott trial of Stoddard's testimony, of Hepler's testimony to the court out of the jury's presence (February 16, 1994), and of Hepler's testimony before the jury (February 17, 1994).
 
 
 6
 The district court ruled on the motion at Stoddard's sentencing hearing prior to sentencing him. Both Stoddard and Hepler testified. Hepler testified that, in December 1993, Stoddard said Scott knew of the robbery and participated. She said that, at the February 1994 meeting just before Scott's trial, Stoddard had first said Scott knew nothing about the robbery, then--when asked about his prior statement on December 16--said the truth was that Scott did know about the robbery beforehand.
 
 
 7
 Stoddard testified that, although he may have said to Agent Hepler that he told Scott he was going to "rob a bank," he actually meant (and Scott understood) that he was going to obtain money through fraud. The court found Hepler's testimony more credible than Stoddard's, found that Stoddard had breached the plea agreement, and released the government from its obligations.
 
 
 8
 The court then found that Stoddard had obstructed justice, either by giving perjured testimony at Scott's trial, or by giving a materially false statement to a law enforcement officer when he told Agent Hepler that he had told Scott of his plan to rob the bank on the way to the bank. U.S.S.G. Sec. 3C1.1, comment. (n.3(b), (g)). Because Stod dard had obstructed justice, the court held that he should not receive any adjustment for acceptance of responsibility.
 
 
 9
 The commentary to guideline section 3E1.1 provides that conduct resulting in an adjustment for obstruction of justice ordinarily indicates that the defendant has not accepted responsibility for his offense, but states that there may be extraordinary cases in which both adjustments could be applied. USSG Sec. 3E1.1, comment. (n.4). The district court specifically found that Stoddard's was not an extraordinary case where both adjustments might apply.
 
 
 10
 On appeal, Stoddard contends that his case is extraordinary because he accepted responsibility for his own conduct, while his obstructive conduct concerned a co-defendant. He maintains that the circumstances in which his obstructive statements were made (the December and February meetings with the government) were somehow extraordinary, as was the government's failure to amend the indictment against Scott to include aiding and abetting a larceny rather than a robbery. He also proffers as an extraordinary circumstance the fact that he was addicted to gambling and consequently owed money for back taxes and child support at the time of the robberies, although he did not use the money to discharge these obligations. Finally, he claims that he did not intend to mislead the government and, if he unwittingly did so, his motive was merely to protect his cousin, who was innocent.
 
 
 11
 The decision as to whether a reduction for acceptance of responsibility is warranted is primarily a factual one. United States v. Curtis, 934 F.2d 553, 557 (4th Cir.1991). Stoddard does not contest the district court's determination that he obstructed justice, and we are unable to say that the district court erred in finding that Stoddard's case was not an extraordinary one where an acceptance of responsibility reduction could also be made.
 
 
 12
 The sentence imposed by the district court is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED