**UNITED STATES of America,**
**Respondent,**

v.

**Jing Ping LI, Defendant–Petitioner.**

**Action No.  2:96cv1208.**
**[Original Criminal No.  2:92cr188.]**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 29, 1997.

Jing Ping Li, Ashland, KY, Pro Se.

Barton N. Daniels, Virginia Beach, VA, Defendant's Trial Counsel.

James A. Metcalfe, Asst. U.S. Atty., Norfolk, VA, for U.S.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons stated below, the court denies defendant's motion.

### I. Factual and Procedural History

Defendant Jing Ping Li, and his codefendants Bin Wu and Pinzhe Zhang, are all nationals of the Peoples Republic of China ("PRC") who were legally admitted into the United States on visas. The defendants were involved in a conspiracy to illegally export 18 mm and 25 mm second generation image intensifying tubes (night vision devices) to the PRC. Li and his codefendants set up several corporations—Pacific Basin Import/Export Company, Comtex International, and Cimex International—to purchase the image intensifying tubes from Varo Incorporated, a Texas company that manufactures the devices. Between November, 1991, and June, 1992, Li was the principal contact with Varo. After Li withdrew from the conspiracy in June, 1992, his codefendant Zhang became Varo's principal contact.

The coconspirators purchased the image intensifying tubes from Varo using funds wired into the United States from Ansyn Company, a Hong Kong company acting as a front for the Ministry of State Security ("MSS") of the PRC. The devices were shipped via United Parcel Service and Federal Express to Li's home in Virginia Beach, Virginia, and, later, to offices of the Pacific Basin Import/Export Company in Norfolk, Virginia. Defendants repackaged the tubes, created misleading shipping documents, and exported the tubes to Ansyn Company at various Hong Kong addresses for further shipment to the PRC.

Although image intensifying tubes may be purchased legally, shipment outside of the United States without a proper export license is prohibited by the Arms Export Control Act, 22 U.S.C. § 2778(b)(2) and (c), and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. pts. 120–21. The defendants did not obtain export licenses for the image intensifying tubes they shipped to the PRC. Moreover, defendants would not have been able to procure export licenses because shipment of the devices to the PRC, or export to any country by foreign nationals, is prohibited.

The defendants were arrested in Norfolk on October 7, 1992, and were detained upon a criminal complaint charging them with illegally exporting munitions list items without the required State Department export license, in violation of the Arms Export Control Act. Defendants' assets were also restrained. On November 4, 1992, a grand jury in the Eastern District of Virginia returned a 49-count indictment charging defendants with conspiracy, 18 U.S.C. § 371; violations of the Arms Export Control Act, 22 U.S.C. § 2778; money laundering, 18 U.S.C. §§ 1956(a)(2)(A), 1956(a)(1), 1957; and false statements, 18 U.S.C. § 1001. The indictment sought $410,000 in forfeitures. On

June 17, 1993, a jury found Li guilty of the crimes charged in Count 1 (conspiracy);[1] Counts 2 and 3 (Arms Export Control Act violations); and Counts 24, 29, 31, 34, 37, and 38 (money laundering). Li was acquitted on Counts 4, 5, and 6, which charged him with Arms Export Control Act violations in September and October of 1992.

At the sentencing hearing on September 17, 1993, the court determined that Li's base offense level for money laundering was 23 under the United States Sentencing Commission, *Guidelines Manual* ("USSG") § 2S1.1(a)(1). The substantive money laundering counts on which Li was convicted totaled $92,930.[2] The counts for which Li was not convicted, but the court found to be relevant, foreseeable conduct and overt acts in furtherance of the conspiracy, totaled $99,435.[3] Consequently, by adding these two numbers, the court determined that the total "value of funds" involved in the money laundering transactions was $192,365,[4] and gave Li a one-level enhancement under USSG § 2S1.1(b)(2) for money laundering of funds in excess of $100,000. The court also added a three-level enhancement under USSG § 3B1.1(b) for Li's role in the offense. Based on a total offense level of 27 and a criminal history category of I, the court sentenced Li to serve 72 months of imprisonment. The court also entered orders of forfeiture as to all defendants for $416,881.50.

All of the defendants filed appeals, which were consolidated for briefing and argument. The Fourth Circuit Court of Appeals allowed the defendants to file *pro se* briefs to supplement the arguments put forth by their court-appointed counsel. On April 11, 1995, the Fourth Circuit affirmed all defendants' convictions and sentences, and denied a rehear-

---

1. Count 1, the conspiracy count, charged the defendants with conspiring to defraud the United States, and with conspiring to commit specific offenses, including Arms Export Control Act violations (22 U.S.C. § 2778); transferring money from outside the United States into the country with the intent to promote a specified unlawful activity (18 U.S.C. § 1956(a)(2)(A)); conducting and attempting to conduct financial transactions with the proceeds of an unlawful activity to promote the carrying on of a specified unlawful activity (18 U.S.C. § 1956(a)(1)); engaging in monetary transactions in criminally derived property that was of a value greater than $10,000 (18 U.S.C. § 1957); and making and using false, fictitious, and fraudulent export related shipping documents (18 U.S.C. § 1001).

2. The individual amounts for these counts, which Li labels Group I, are: Count 24, $10,000; Count 29, $3,300; Count 31, $4,530; Count 34, $35,300; Count 37, $4,500; and Count 38, $35,300.

3. The individual amounts for these counts, which Li labels Group II, are: Count 7, $18,932.50; Count 10, $14,987.50; Count 12, $44,190; and Count 13, $21,325.

4. The following table is similar to the one Li created to assist the court with his analysis. *See* Def.'s Mem. at 6. The figure $192,365 for the total value of funds is the sum of the unlawful transfers in Group I ($92,930) and Group II ($99,435).

| GROUP II | DATE | UNLAWFUL TRANSFER | GROUP I |
|---|---|---|---|
| Count 7 ($18,932.50) | (1/10/92) | from Hong Kong to Wu | |
| | (1/14/92) | from Wu's account through Li to Varo, Inc. | Count 24 ($10,000) |
| Count 10 ($14,987.50) | (3/10/92) | from Hong Kong to Wu | |
| | (3/12/92) | from Wu's corporate account to Li | Count 29 ($3,300) |
| | (4/6/92) | from Wu's corporate account to Li's corporate account | Count 31 ($4,530) |
| | (6/17/92) | from Li's corporate account to Varo, Inc. | Count 37 ($4,500) |
| Count 12 ($44,190) | (4/28/92) | from Hong Kong to Wu | |
| | (5/5/92) | from Wu's corporate account to Li's corporate account | Count 34 ($35,300) |
| | (6/19/92) | from Li's corporate account to Varo, Inc. | Count 38 ($35,300) |
| Count 13 ($21,325) | (6/17/96) | from Hong Kong to Wu | |

ing and a rehearing en banc on May 4, 1995. The Supreme Court denied certiorari on October 2, 1995.

Jing Ping Li has now filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Li objects to the court's calculation of the value of funds involved in his money laundering convictions, which produced a one-level enhancement under USSG § 2S1.1(b)(2) for money laundering in excess of $100,000. According to Li, the court violated his due process rights when it erroneously determined that the total value of funds was $192,365. Because his attorney did not correct the court's calculation of the value of funds at sentencing, or raise this issue on appeal after Li allegedly asked him to do so, Li also contends that he received ineffective assistance of counsel. The United States has filed its response, and Li has filed a reply. This matter is now ripe for determination.[5]

## II. Analysis

■ Li proceeds under § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States … may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. In deciding a § 2255 motion, the court need not hold a hearing, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* Furthermore, if the motion is brought before the sentencing judge, the judge may rely on recollections of previous events to decide the motion. *Blackledge v. Allison,* 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 1629 n. 4, 52 L.Ed.2d 136 (1977). This court conducted the trial and sentencing hearing, and has thoroughly reviewed the motions, files, and records in this case. Ac-

cordingly, the court finds no hearing necessary to address defendant's § 2255 motion.

■ Li contends that his due process rights were violated because the court relied upon erroneous information to a constitutionally significant degree when it calculated his sentence. In support of his argument that a due process violation has occurred, Li cites *Paine v. Baker,* 595 F.2d 197 (4th Cir.), *cert. denied,* 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979), which held "that in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his [presentence report], (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." *Id.* at 201. Although Li boldly asserts that his due process rights were violated because the court relied upon erroneous or false information when it calculated the value of funds, he does not present one iota of evidence to substantiate his claim that the information in his presentence report was erroneous or false. Accordingly, Li has not raised a "a claim of constitutional magnitude" under *Paine.*

Based on Li's rather elaborate critique of the court's calculation of the value of funds, it appears that his true objection is not to the information relied upon by the court, but rather to the court's method of calculating the value of funds by adding together the substantive money laundering counts on which Li was convicted, which totaled $92,930, and the counts on which Li was not convicted, but which were found to be relevant, foreseeable conduct and overt acts in furtherance of the conspiracy, which totaled $99,435. In other words, Li does not offer evidence or even argue that the amounts of $92,930 or $99,435 are incorrect; he only contends that the court should not add these two numbers together when calculating the value of funds. Li maintains that the court should instead measure the value of funds involved in the money laundering transactions by using only the amount of money

---

5. Although it would appear that Li's § 2255 motion is barred under the one-year statute of limitations period created by the Antiterrorism and Effective Death Penalty Act of 1996, which became effective on April 24, 1996, *see Clarke v.* *United States of America,* 955 F.Supp. 593 (E.D.Va.1997) (Doumar, J.), the court declines to decide whether his motion is time-barred absent direction from the Fourth Circuit on this issue.

"injected" or "infused" into the criminal enterprise, and not subsequent transfers of that money, as it would be double- or triple-counting to add the latter amounts. According to Li, the court erred when it counted the same money twice, and sometimes three times, and concluded that the total value of funds was $192,365.[6]

■ Li recognizes that, because he failed to raise this objection on direct appeal,[7] he has procedurally defaulted on this issue. Def.'s Mem. at 11. Nevertheless, Li insists that he can raise his objection for the first time in this § 2255 motion because he can show "cause and actual prejudice" pursuant to *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Def.'s Mem. at 11–12. Li contends that his failure to raise the value of funds issue was "caused" by ineffective assistance of counsel both at sentencing and on appeal. At the sentencing hearing, Li contends that his counsel incorrectly added up a column of numbers representing the substantive money laundering counts on which Li was convicted, and arrived at $102,930, instead of $92,930, the correct amount. According to Li, the court accepted his counsel's erroneous calculation, and

> went on to indicate that since the amount was already over $100,000 that it really didn't make any difference. Therefore, [counsel's] erroneous calculation was the initial cause of the "amount involved" er-

ror. Moreover, in not recognizing the double-counting, [counsel] compounded the error.

*Id.* at 12. On appeal, Li allegedly asked his counsel to object to this court's calculation of the value of funds, but his counsel failed to do so.[8] In addition to "cause," Li also contends he satisfies the "prejudice" prong of *Frady* because he received an additional one point enhancement due to the court's alleged miscalculation of the value of funds. *Id.*

Li's objection to the court's calculation of the value of funds, in and of itself, is an appellate, nonconstitutional issue. Therefore, since Li failed to raise this nonconstitutional issue on appeal, the government, citing *United States v. Rowland,* 848 F.Supp. 639, 641 (E.D.Va.1994), asserts that he is procedurally barred from raising this issue collaterally. Pl.'s Mem. at 17. In *Rowland,* the defendant, who had not appealed his sentence, filed a § 2255 motion alleging that the court had failed to make certain factual findings before ordering restitution. *Id.* at 641. In dismissing the defendant's motion, the court observed that "[n]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Id.* The court further expressed its uncertainty as to whether the *Frady* "cause and actual prejudice" standard, which is "clearly applicable to errors to which no contemporaneous objection was made, also applies to nonconstitutional, nonjurisdictional claims not raised on appeal." *Id.* at

---

**6.** A summary of Li's argument is as follows: During the conspiracy, money was transferred (1) from Hong Kong to Wu's account, (2) from Wu's account to Li's account, and (3) from Li's account to Varo, Inc. Under Li's theory, a one dollar bill injected into the money laundering scheme would always amount to one dollar when the court calculates the value of funds, regardless of the number of times this one dollar bill was transferred. According to Li, counting the one dollar bill each time it was transferred, *i.e.,* calculating the value of funds to be three dollars for three separate transfers, would be triple-counting because it is the same one dollar bill used in each transfer. Similarly, where money was transferred (1) from Hong Kong to Wu's account, and (2) from Wu's account through Li to Varo, Inc., Li argues that counting the same one dollar bill injected into the conspiracy twice, *i.e.,* calculating the value of funds to be two dollars, would be double-counting. *See* Def.'s Mem. at 2–10. Li does admit, however, that the value of funds

would include interest, profits, and further infusions of money. Def.'s Reply at 20.

**7.** The government argues that Li also did not raise this issue at sentencing. Li, on the other hand, contends that he did raise the issue because, one, he objected to paragraph 35 of the presentence report, which stated that Li laundered $416,881.50, and, two, the parties and the court spent time at sentencing discussing the amount of money for which Li was responsible. This issue is not determinative, however, as Li admits he did not raise the issue on appeal.

**8.** Li did object on appeal to the three-level enhancement of his offense level under USSG § 3B1.1(b) for his role in the offense. This enhancement was affirmed by the Fourth Circuit. *United States v. Wu,* No. 93–5800, 1995 WL 215440, at *9 (4th Cir. April 11, 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 259, 133 L.Ed.2d 183 (1995).

641 n. 2. In citing *Rowland,* the government thus suggests that the court should not even consider whether Li could satisfy the "cause and actual prejudice" standard, but instead should simply deny Li's motion on the grounds that his objection to the calculation of the value of funds was not raised earlier.

Based on the circumstances of this case, however, the government's reliance on *Rowland* is misplaced. Even if *Rowland* does hold that the *Frady* standard does not apply to nonconstitutional, nonjurisdictional claims not raised on appeal, *Rowland* would not bar Li's § 2255 motion. Unlike the defendant in *Rowland,* Li also raises what is clearly a constitutional issue: he asserts that he received ineffective assistance of counsel at his sentencing hearing and on appeal.

■ Although *Rowland* does not bar Li's § 2255 motion, this does not mean that *Frady* analysis is proper here, given the circumstances of this case. The *Frady* test provides that a petitioner must satisfy a heightened "cause and actual prejudice" standard before he can raise collaterally an issue that he failed to raise on direct appeal. *Frady,* 456 U.S. at 167, 102 S.Ct. at 1594. Because a § 2255 petitioner "has already had an opportunity to present his federal claims in federal trial and appellate forums," the Supreme Court in *Frady* felt it appropriate to punish those who failed to take advantage of their earlier opportunities to raise an issue by creating ·"a significantly higher hurdle than would exist on direct appeal." *Id.* at 166, 102 S.Ct. at 1593. Im-

plicit in this rule is the understanding that the defaulted issue could have and should have been raised, for the first time, on direct appeal.

In this case, the constitutional issue raised by Li is ineffective assistance of counsel. As numerous courts have noted, this is an issue which "is more properly raised in a § 2255 habeas motion for collateral relief," and thus should not be raised on direct appeal. *United States v. DeFusco,* 949 F.2d 114, 120 (4th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992); see *United States v. Wu,* No. 93–5800, 1995 WL 215440, at *10 (4th Cir. April 11, 1995), *cert. denied,* —— U.S. ——, 116· S.Ct. 259, 133 L.Ed.2d 183 (1995) (when one of Li's codefendants in this case claimed ineffective assistance of counsel, the court responded that such "claims are better raised in a 28 U.S.C. § 2255" motion); *United States v. Lurz,* 666 F.2d 69, 78 (4th Cir.1981), *cert. denied,* 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982); *United States v. Fisher,* 477 F.2d 300, 302 (4th Cir.1973). Because it would have been improper for Li to raise his ineffective assistance claim on direct appeal, the rationale underlying the *Frady* decision does not apply. One who raises an ineffective assistance claim for the first time in a § 2255 motion does not have to pass muster under *Frady,* but need only satisfy the less stringent two-pronged test first set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[9]

In order to prove that ineffective assistance of counsel violates the Sixth Amend-

9. If Li's § 2255 claim had simply been that the court incorrectly calculated the value of funds, which is an alleged error that should have been raised on appeal, then he could only proceed if he could meet the cause and actual prejudice standard of *Frady.* If that were Li's sole claim, however, then he would probably still not be able to proceed under *Frady* because his grievance with regard to the court's calculation is a "nonconstitutional, nonjurisdictional claim[] not raised on appeal." *Rowland,* 848 F.Supp. at 641 n. 2.

In other circumstances, however, a petitioner who first alleges a constitutional violation in a habeas proceeding could proceed under *Frady,* with or without an attendant ineffective assistance of counsel claim. For example, a petitioner who complains of an unlawful search and seizure states a constitutional claim under the

Fourth Amendment, and thus may proceed under *Frady.* That is, the petitioner could raise the Fourth Amendment claim collaterally, notwithstanding his failure to raise it on direct appeal, if he could show cause and actual prejudice. *See Frady,* 456 U.S. at 167, 102 S.Ct. at 1594. In such a situation, a counsel's ineffective assistance may constitute *Frady* cause. *See United States v. Breckenridge,* 93 F.3d 132, 134 n. 1 (4th Cir. 1996). In the case at bar, Li argues that ineffective assistance of counsel constitutes *Frady* cause, thus excusing his failure to object to the court's calculation of the value of funds at sentencing and on direct appeal. Because the *Frady* analysis does not apply to the nonconstitutional issue of whether the court's calculation of the value of funds was proper, however, petitioner's argument impermissibly attempts "to put the cart before the horse."

ment, Li must prove both (1) deficient performance and (2) prejudice. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993); *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir.1996). To prove deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.[10] Failure to meet either prong defeats a defendant's ineffective assistance of counsel claim. *Id.* at 700, 104 S.Ct. at 2071. The court need not address both components of the test, if the defendant makes an insufficient showing on one part of the test. *Id.* at 697, 104 S.Ct. at 2069–70. Because Li was not prejudiced by his counsel's failure to object to this court's calculation of the value of funds, the court need not address whether counsel's performance was deficient.

■ First, the court did not engage in double- and triple-counting when it calculated the total value of funds involved in this money laundering case and then increased defendant's offense level by one under USSG § 2S1.1(b)(2)(B), because the value of funds exceeded $100,000, but was less than $200,-000. The background commentary to USSG § 2S1.1 provides that "[t]he amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise." USSG § 2S1.1, comment. (backg'd). Although the term "value of funds" is not expressly defined in USSG § 2S1.1 or its commentary,[11] one court concluded that "'the funds' obviously refer to funds that are used by the defendant in an unlawful monetary transaction." *United States v. Johnson*, 971 F.2d 562, 575–76 (10th Cir.1992) (noting the difference between the amount of "loss" in USSG § 2F1.1, which is the assessment of the impact of the fraud on individual victims, and the "value of the funds" in USSG § 2S1.1, which is measured by using "the total amount of funds involved" in the laundering transaction). The court in *Johnson* further stated that "in determining the value of the funds under § 2S1.1, the district court is not necessarily limited only to the funds identified with the counts of conviction." *Id.* at 576 n. 10. This court agrees with *Johnson* that it should take into account the total amount of funds involved in each unlawful monetary transaction, not just the funds identified with the counts on which Li was convicted.[12]

Although Li's argues that the court should only consider the money injected or infused into the conspiracy when determining the value of funds,[13] he does not cite any case law

**10.** The *Strickland* prejudice test is not as stringent as the *Frady* test of *actual prejudice*. In *Strickland*, the Court noted that an ineffectiveness claim is an attack "on the fundamental fairness of the proceeding whose result is challenged." 466 U.S. at 697, 104 S.Ct. at 2069. Moreover, "[s]ince fundamental fairness is the central concern of the writ of habeas corpus, ... no special standards [such as those contained in *Frady*] ought to apply to ineffectiveness claims made in habeas proceedings." *Id.* at 697–98, 104 S.Ct. at 2070 (citations omitted).

**11.** Although Li correctly notes that the term "value of funds" is defined in USSG § 2S1.3, comment. (n. 1) ("For the purposes of this guideline, 'value of funds' means the amount of the funds involved in the structuring or reporting conduct."), the offenses covered by USSG § 2S1.3, *Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report' Knowingly Filing False Reports*, "relate to records and reports of certain transactions involving currency and monetary instruments." *Id.* (backg'd). Accordingly, this definition provided in the commentary of USSG § 2S1.3 does not apply to the term "value of funds" in USSG § 2S1.1, *Laundering of Monetary Instruments*.

**12.** Although the government cites several cases addressing grouping of funds, Pl.'s Resp. at 22–24, this court declines to address those cases, as it is not necessary to do so.

**13.** Li further maintains that "the amount of money laundered is not the same as the amount of money involved," "[t]he amount of funds cannot be efficiently compared to the number of transactions," and "there can be no argument that the 'amount of money involved/value of the funds'

in support of his argument. Moreover, when one applies his theory, it is clear that his method of calculating the value of funds is unsound and does not accurately measure the "magnitude of the criminal enterprise." According to Li's theory, coconspirators unlawfully transferring $100 a hundred times through a hundred different accounts should be treated the same as coconspirators unlawfully transferring $100 once through one account. Similarly, under his theory, a criminal enterprise that unlawfully transferred $100 once has a greater "magnitude" than a criminal enterprise that unlawfully transferred $99 a hundred times through a hundred different accounts. It does not make sense to look only at the amount of capital injected or infused into the money laundering scheme, as Li suggests, and ignore what happens to that capital. Clearly the "magnitude of the criminal enterprise" is larger for a conspiracy involving a hundred unlawful transfers of $100 or $99 compared to a conspiracy involving one unlawful transfer of $100.

In the case at hand, because the money "injected" into the conspiracy was unlawfully transferred two or three times, rather than just once, the "magnitude of the criminal enterprise" is larger. Although Li argues that adding the value of funds for each transfer would artificially augment his culpability, the court concludes that this would be an accurate indicator of the magnitude of the criminal enterprise in which he was involved. Furthermore, since Li "admits that each 'unlawful' transfer could be viewed as a separate and distinct violation" of 18 U.S.C. §§ 1956(a)(1) and 1956(a)(2)(A), Def.'s Mem. at 2, it does not make sense to treat several unlawful transfers of the money as one unlawful transfer when calculating the value of funds.[14]

Accordingly, when the court determined the value of funds by adding together $92,930, the total amount of funds from the counts on which Li was convicted, and $99,435, the total amount of funds from the counts found to be relevant, foreseeable conduct and overt acts in furtherance of the conspiracy, the court did not engage in double- or triple-counting. Clearly, the total amount of $192,365 reflects the "magnitude of the criminal enterprise" in this case, as the conspiracy not only involved transfers from Hong Kong to Wu, or from Wu to Li, or from Li to Varo—it included all three types of transfers, and each transfer violated the law.[15]

---

would be only $100,000 no matter how many 'transactions' of the $100,000 took place." Def.'s Reply at 12–13.

14. For each count on which Li was convicted, the law was violated: Count 24 (Wu through Li to Varo): $10,000; Count 29 (Wu to Li): $3,300; Count 31 (Wu to Li): $4,530; Count 34 (Wu to Li): $35,300; Count 37 (Li to Varo): $4,500; and Count 38 (Li to Varo): $35,300. For each count found to be relevant, foreseeable conduct and overt acts in furtherance of the conspiracy, the law was also violated: Count 7 (Hong Kong to Wu): $18,932.50; Count 10 (Hong Kong to Wu): $14,987.50; Count 12 (Hong Kong to Wu): $44,190; and Count 13 (Hong Kong to Wu): $21,325. Just because the violations occurred in a linear fashion in this conspiracy (from Hong Kong to Wu to Li to Varo) does not make them less serious or less worthy of punishment.

15. Li tries to further support his argument by noting that in multiple-count cases, courts often impose sentences on all counts to run concurrently rather than consecutively. Li claims that under the court's approach to calculating the value of funds,

twenty counts of money laundering, each having a base offense level of twenty-three (23) would yield a base offense level of 260 since Congress intended to punish each violation. However, we understand that this approach could not feasibly work under the guidelines since almost every multiple count indictment would result in a base offense level in excess of the maximum (43).

Def.'s Reply at 14. Although Li is correct that courts often impose concurrent sentences in multiple-count cases, the decision of whether to impose the sentences consecutively or concurrently, see USSG § 5G1.2, is vastly different than the calculation of the value of funds in a money laundering case. The guidelines do not limit the calculation of the value of funds to the count with the highest amount of money, and nothing in the guidelines suggests that the court has the discretion in a multiple-count case to calculate the total value of funds in a concurrent manner. Clearly, the term "value of funds" does not refer to the amount of money involved in just one count of a multiple-count case. Rather, it would be the aggregation of funds involved in each count of that multiple-count case, as that is the total amount of money that was unlawfully laundered.

Even if this court agreed with Li that the court's calculation of the value of funds was double- or triple-counting, which it does not, the Fourth Circuit has held that double counting is permissible in certain circumstances.[16] *United States v. Puckett,* 61 F.3d 1092, 1096–97 (4th Cir.1995); *United States v. Curtis,* 934 F.2d 553, 556 (4th Cir.1991). In *Curtis,* 934 F.2d at 556, where the Fourth Circuit affirmed the district court's enhancement of a defendant's sentence both under USSG §§ 2B1.1(b)(4) and 3B1.1(c), the court noted that the "sentencing guidelines are explicit when double counting is forbidden."*Id.* The court further stated that "if conduct falls within the applicable definitions, then it is appropriate to increase the offense level for each enhancement." *Id.* In *Puckett,* the court noted that "there is no prohibition of doublecounting in the commentary [of USSG § 2S1.1], and the commentary explicitly notes that the amount of money laundered as a result of criminal activity is a factor in determining the offense level." *Id.* at 1097. Thus, the Fourth Circuit held that the district court properly enhanced a sentence both under USSG § 2S1.1(b)(1) for drug involvement, and under USSG § 2S1.1(b)(2) based upon the value of funds involved in the money laundering scheme. *Id.*

Li argues that *Puckett, Curtis,* and similar cases cited by the government are distinguishable because different sections of the guidelines were used for the enhancements in those cases. In this case, the alleged double- and triple-counting occurred within one applicable guideline section, USSG § 2S1.1(b)(2). Defendant does not cite any support for his argument that the alleged double- and triple-counting by the court in

this case was impermissible. The Fourth Circuit has clearly noted that "sentencing guidelines are explicit when double counting is forbidden," *Curtis,* 934 F.2d at 556, and there is nothing in the text or commentary of USSG § 2S1.1 to prohibit the method of calculation of the value of funds used by the court in this case. Accordingly, defendant was not prejudiced when his counsel failed to object to the court's calculation of the value of funds, as the court did not err when it calculated the value of funds by totaling the amount of each unlawful money laundering transaction, and then applied the one-level enhancement for value of funds in excess of $100,000.[17]

### III. Conclusion

For the reasons stated above, the court DENIES Li's motion under § 2255 to vacate, set aside, or correct his sentence.

Li is advised that he may appeal from this Opinion by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within thirty (30) days from the date of this Opinion.

The Clerk is DIRECTED to send a copy of this Opinion to Li, his trial counsel, and the United States Attorney.

It is so ORDERED.

---

16. Li tries to analogize this case to a Second Circuit case that held it "would be impermissible double-counting" for a court to add the amount of drugs manufactured to the amount of drugs found to be distributed, when calculating the drug amounts. *See* Def.'s Mem. at 8–9 (citing *United States v. Spencer,* 4 F.3d 115 (2nd Cir. 1993)). Drug amounts, however, are not an apt analogy to money laundering transactions. Drug manufacturing and drug distribution go hand in hand, as illegally distributed drugs are usually illegally manufactured. Money laundering transactions are not similarly dependent on each other. For example, when Li paid Varo for the devices, the money could have come from a legal

source of funds, such as Li's own personal savings, instead of from another unlawful transfer of funds, such as the unlawful transfer from Hong Kong to Wu, or from Wu to Li. Thus, *Spencer's* prohibition on double counting does not apply to this money laundering case.

17. Implicit in this ruling is that there was no deficient performance by Li's counsel. Moreover, if Li cannot meet the *Strickland* prejudice test, he clearly could not meet the *actual prejudice* test of *Frady. See supra* note 10 and accompanying text. Also, failure to demonstrate ineffective assistance of counsel leaves Li without *Frady* cause. *See supra* 571 and note 9, ¶ 2.