**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jesus Lazaro BARRIOS a/k/a, Jose Fernandez a/k/a, Flaco, Defendant–Appellant.**

**No. 92–4064**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

June 29, 1993.

---

Arturo V. Hernandez, Miami, FL, for defendant-appellant.

Robert Powell, Miami, FL, for plaintiff-appellee.

Before FAY, ANDERSON, and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Jesus Barrios appeals his sentence after a plea of guilty to one count of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) and one count of income tax evasion under 26 U.S.C. § 7206(1). Barrios challenges the district court's four-level enhancement of his offense level under the U.S.S.G. § 2S1.1(b)(2)(E) based on the court's finding that the amount of laundered funds exceeded $600,000. Barrios contends that the district court improperly included in its calculation of the amount of laundered funds interest earned on the original narcotics trafficking proceeds. The legal question presented by Barrios' argument is a matter of first impression in this Circuit, and as far as this Court can determine, an issue that has yet to be addressed by any other circuit.

Barrios was convicted previously on charges relating to the importation into the United States of large quantities of cocaine and marijuana. The money laundering charges in this case were based on the proceeds received from those drug sales. Barrios' conviction and sentence for tax evasion are not at issue in this appeal.

Barrios laundered the drug proceeds by sending the money to Jose Nasser who, in turn, deposited the funds in a number of bank accounts in Panama, Germany, and Switzerland. Nasser subsequently issued ten checks totalling $674,416.33 payable to Barrios or to an alias used by Barrios. Barrios delivered the $674,416.33 that he received from Nasser to Nicholas Cure, who deposited the funds in the Wellington International Bank of the Berry Islands. The money was then transferred to anonymous corporations and ultimately back to Barrios. Barrios does not dispute that the ten checks totalled $674,416.33. Barrios contends, however, that the original amount he sent to

Nasser for deposit was only $595,000 and that the difference between these figures represents "legitimate" interest earned on the admittedly illegitimate drug proceeds.

■■■ U.S.S.G. § 2S1.1(b)(2) provides a table of graduated increases in the base offense level for money laundering convictions involving more than $100,000 depending on the "value of the funds." The district court increased Barrios' offense level under § 2S1.1(b)(2)(E) by four levels based on the court's finding that the value of the funds laundered was more than $600,000, but less than $1,000,000. The district court overruled Barrios' objection and adopted the recommendation contained in the Presentence Report, which found the amount of laundered funds was $674,416.33. This gave Barrios an offense level of 27, which when combined with Barrios' criminal history category of I, established a range of 70–87 months for the money laundering conviction. The district court sentenced Barrios to 87 months. While we review the district court's determination of the facts concerning the amount of money involved in the laundering scheme under a clearly erroneous standard, *United States v. De La Rosa*, 922 F.2d 675, 679 (11th Cir.1991), the district court's interpretation of the Guidelines is subject to de novo review. *United States v. Revel*, 971 F.2d 656, 660 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283, *and cert. denied*, —— U.S. ——, 113 S.Ct. 1828, 123 L.Ed.2d 457 (1993).

Barrios did not dispute the Government's evidence at sentencing, in the form of ten checks, establishing that the amount of funds involved in Barrios' laundering scheme totalled $674,416.33. *See De La Rosa*, 922 F.2d at 679 (burden on Government to establish amount of money involved in laundering scheme by preponderance of evidence). Nor did Barrios offer any evidence to support his contention that some $75,000 of that amount represented interest which should not have been included in the calculation. Nonetheless, the district court assumed that interest could be included in the calculation under § 2S1.1(b)(2). The court stated: "I am going to overrule your objection to the calculation, and concede that while some portion of it may be interest gained from the laundered money[,] that would also be calculated under

the guidelines." Thus, the question of whether the district court properly included earned interest in calculating the "value of the funds" under U.S.S.G. § 2S1.1(b)(2) is before this Court. Because we find that it did properly include the interest in the calculations, we affirm the district court in all respects.

■■■ While the Guidelines do not define the term funds as used in § 2S1.1(b)(2), this Court previously has stated that in sentencing under this section, the district court is "required to consider the total amount of funds that it believed was involved in the course of criminal conduct." *De La Rosa*, 922 F.2d at 679. In addition, we agree with the Tenth Circuit that this term "obviously refer[s] to funds that are used by the defendant in an unlawful monetary transaction." *United States v. Johnson*, 971 F.2d 562, 575 (10th Cir.1992). The "value of the funds" involved in a money laundering offense is identified by § 2S1.1(b)(2) as a "Specific Offense Characteristic" and, therefore, sentencing under that section necessarily must take into account "all acts and omissions committed ... by the defendant ... during the commission of the offense." U.S.S.G. § 1B1.3(a)(1)(A).

In this case, Barrios does not dispute that whatever interest was earned on the original drug proceeds sent by him to Nasser stayed with the funds throughout the remainder of the laundering process. Once Barrios received the $674,416.33 from Nasser, he continued to launder that money by sending it to Cure for deposit in another offshore bank, from which it again was transferred to several anonymous corporations before ultimately returning to Barrios' possession. This case does not present a situation where the proceeds of unlawful activity were laundered through a financial transaction and then at a later time legitimately invested for profit. We need not decide in this case whether such profits earned after the money laundering ended could be considered a part of the "value of the funds," because the portion of the $674,416.33 that allegedly represented interest earned on the original drug proceeds itself became part of Barrios' continuing money laundering scheme.

Barrios argues that inclusion of interest leads to "incongruous" results and is contrary to the intent of the Sentencing Guidelines. He cites the commentary to § 2S1.1, which provides that "[t]he amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise." U.S.S.G. § 2S1.1, comment. (backg'd.). Barrios argues that including interest earned on illicit proceeds distorts the magnitude of the criminal enterprise involved. To the contrary, including interest in this case gave an accurate reflection of the size of the money laundering scheme engaged in by Barrios. To the extent the commentary's reference to "the criminal enterprise" means the money laundering enterprise itself, including the earned interest is absolutely necessary to portray the scope of the money laundering enterprise accurately. If the commentary is read to refer to the overall drug trafficking "criminal enterprise," from which the laundered funds were derived, we still believe that the total amount of money involved in the laundering transactions must be considered in order to reflect the magnitude of the enterprise, because money laundering was a part of that larger criminal enterprise which did not end until the money laundering was complete.

Moreover, we have previously acknowledged the societal interest implicated by the offense of money laundering: "money laundering disperses capital from lawfully operating economic institutions to criminals in and out of the country." *United States v. Harper*, 972 F.2d 321, 322 (11th Cir.1992) (quoting *United States v. Gallo*, 927 F.2d 815, 824 (5th Cir.1991)). Including the alleged interest earned on the original drug proceeds deposited by Barrios with Nasser, where that interest was combined with funds which thereafter continued through laundering transactions, is not inconsistent with an intent to address the harm caused by such money laundering offenses. *Cf. United States v. Jackson*, 935 F.2d 832, 840 (7th Cir.1991) (holding that § 1956(a)(1)(B)(i)'s requirement that a transaction "involve" proceeds of unlawful activity does not require tracing of all funds to illicit source for conviction; "the commingling ... is itself sugges-

tive of a design to hide the source of ill-gotten gains").

The district court did not misinterpret the Guidelines when it assumed that the alleged interest in this case could be included when calculating the "value of the funds" involved in the money laundering scheme. Because Barrios did not dispute the evidence establishing the $674,416.33 total amount, the court's calculation of the amount of money involved was not clearly erroneous. We, therefore, AFFIRM Barrios' sentence as imposed by the district court.