

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-1994

# United States v. Thompson

Precedential or Non-Precedential:

Docket 94-3269

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States v. Thompson" (1994). *1994 Decisions*. Paper 185.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/185

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 94-3269

----------

UNITED STATES OF AMERICA

v.

ROSCOE B. THOMPSON,
a/k/a Rudolph Sinclair;
BENJAMIN GARLAND, II,
a/k/a James P. Morgan

ROSCOE B. THOMPSON,
Appellant

----------

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 93-00085-1)

----------

Submitted under Third Circuit LAR 34.1(a)
Tuesday, October 25, 1994

BEFORE: STAPLETON, HUTCHINSON and GARTH, Circuit Judges

----------

(Opinion filed November 14, 1994)

----------

Thomas S. White
Karen Sirianni Gerlach
Michael D. Bartko
Office of Federal Public
    Defender
960 Penn Avenue
415 Convention Tower
Pittsburgh, Pennsylvania 15222

Attorneys for Appellant

Frederick W. Thieman
Bonnie R. Schlueter
Michael L. Ivory
Office of United States Attorney
633 United States Post Office &
    Courthouse
Pittsburgh, Pennsylvania 15219

Attorneys for Appellee

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

The question we must answer on this appeal is whether a sentence for money laundering under § 2S1.1 of the Sentencing Guidelines should be based on the total value of the funds involved in that offense or should it be based on the actual loss sustained by the victims. We reject Thompson's "actual loss" argument which is based on the measurement of the sentence for offenses involving fraud and deceit. See U.S.S.G. § 2F1.1; United States v. Kopp, 951 F.2d 521 (3d Cir. 1991). We hold instead that in imposing a sentence for money laundering pursuant to U.S.S.G. § 2S1.1, the district court should determine its sentence based on the total value of the funds involved.

**I**

Appellant Roscoe Thompson ("Thompson") appeals the sentence imposed after he pled guilty to the charges of money

laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i)[1] and

conspiracy to defraud a financial institution, 18 U.S.C.

---

[1]. 18 U.S.C. § 1956 (a)(1)(B)(i) provides as follows:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of unspecified unlawful activity--
>
> . . . .
>     (B)  knowing that the transaction is designed in whole or in part--
>         (i)  to conceal or disguise the nature, location, the source, the ownership or the control of the proceeds of specified unlawful activity, or
> . . . .
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment of not more than twenty years, or both.

§ 1344,[2] in violation of 18 U.S.C. § 371.[3]  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).  On appeal, Thompson argues that the district court's calculation of his sentence under U.S.S.G. § 2S1.1(b)(2) is inconsistent with this Court's holding in United States v. Kopp, 951 F.2d 521 (3d Cir. 1991).

## II

The essential facts of this case are not in dispute. Thompson, Victor Thompson ("Victor") and co-defendant Benjamin Garland ("Garland") together intercepted and diverted funds that investors mailed to the New York securities firm of J.P. Morgan

---

[2].  18 U.S.C. § 1344 provides as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice--

   (1) to defraud a financial institution;  or

   (2)  to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[3].  18 U.S.C. § 371 provides in relevant part:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Securities, Inc. ("J.P. Morgan"). Their plan was executed in the following manner. During the period from July 18, 1991 through December 2, 1991, Victor, who was a J.P. Morgan employee, intercepted thirty-four checks sent to J.P. Morgan by various people throughout the United States. Victor forwarded these checks to Garland in Tarpon Springs, Florida, who mailed the stolen checks to the appellant Thompson in Pittsburgh, Pennsylvania.

On October 9, 1991, Thompson opened an account at Pittsburgh National Bank (now PNC Bank) under the fictitious business name of J.P.M. Utility Auditors, Inc. ("JPM"). Thompson used the alias of Rudolph Sinclair to create the account. On the same day Thompson obtained a telephone answering service in JPM's name.

Between October 10, 1991, and December 6, 1991, Thompson deposited thirty-four stolen checks with a total value of $352,220.50 into JPM's checking account. The conspirators withdrew the funds by wire transfers, checks and automatic teller machine transactions. By means of these withdrawals, Thompson and Garland diverted the stolen funds to a series of other accounts with PNC Bank, Barnett Bank, Citibank and Charles Schwab, a discount brokerage firm.

Investigators from PNC Bank became aware of these illicit activities in January, 1992. PNC froze the funds that remained in the accounts and thereby prevented the withdrawal of

$99,561.27 of the $352,220.50 that Thompson had stolen and deposited. These funds were eventually returned to the J.P. Morgan investors who were the victims of the scheme. Of the stolen funds, $252,659.23 was not recovered.

On April 15, 1993, a federal grand jury returned an eighty-two count indictment against Thompson and Garland.[4] Under an agreement with the Government, Thompson pled guilty to Count One (conspiracy to defraud) and Count Fifty-One (money laundering) of the indictment. Thompson acknowledged committing the crimes charged in the remaining counts of the indictment, and stipulated that the conduct alleged in the entire indictment could be considered by the district court in imposing a sentence. Thompson also accepted the responsibility for paying restitution in the amount of $352,220.50.

---

[4]. The indictment enumerated the following charges: Count One charged the defendants with conspiracy to defraud a financial institution in violation of 18 U.S.C. § 371; Counts Two through Twelve charged them with possession of forged securities in violation of 18 U.S.C. § 513; Counts Thirteen through Twenty-Eight charged them with bank fraud in violation of 18 U.S.C. § 1344; Counts Twenty-Nine through Thirty-One charged them with wire fraud in violation of 18 U.S.C. § 1343; Count Thirty-Two charged Thompson with the use of a fictitious identity in violation of 18 U.S.C. § 1342; Counts Thirty-Seven through Forty-Seven charged Thompson and Garland with interstate transportation of stolen property in violation of 18 U.S.C. § 2314; Counts Forty-Eight through Fifty charged the defendants with mail fraud in violation of 18 U.S.C. § 1341; Counts Fifty-One through Eighty-One charged them with money laundering in violation of 18 U.S.C. § 1956; and Count Eighty-Two charged them with money laundering in violation of 18 U.S.C. § 1957.

Under the applicable money laundering provisions of U.S.S.G. § 2S1.1(a)(2), Thompson's base offense level was 20. The district court found that the value of the funds involved in the money laundering scheme was $352,220.50. This resulted in a three-level enhancement under U.S.S.G. § 2S1.1(b)(2)(D). Thompson received a three point downward adjustment for acceptance of responsibility. The district court also found that Thompson had a criminal history category of III.

After considering a range of 41 to 51 months, the district court sentenced Thompson to fifty months in prison on both the conspiracy and the money laundering counts, to be served concurrently, to be followed by two concurrent three year terms of supervised release. App. 100. Thompson was ordered to pay $252,693.23 in restitution and a $100 special assessment to the court. This appeal followed.

## III

Thompson challenges the district court's interpretation of the Sentencing Guidelines. The district court's interpretation of the Guidelines is an issue of law subject to plenary review. United States v. Deaner, 1 F.3d 192, 196 (3d Cir. 1993). Section 2S1.1 of the Sentencing Guidelines (Laundering of Monetary Instruments) provides, among other things, for a two level increase in offense level if the value of the funds laundered exceed a $200,000. U.S.S.G. § 2S1.1(b)(2)(C).

The Sentencing Guidelines prescribe a three level increase in offense level when the value of the funds laundered exceed $350,000. U.S.S.G. § 2S1.1(b)(2)(D).

Thompson argues that the district court erred by including the full $352,220.50 in calculating the "value of the funds" prescribed in U.S.S.G. § 2S1.1 and should have excluded the $99,561.27 that was frozen by PNC Bank and subsequently returned to the J.P. Morgan investors. Thus, Thompson contends that the district court should have considered only the sum of $252,659.23 in calculating his sentence. If this were so, Thompson's offense level would be reduced by one point, which would accordingly result in the reduction of his sentence.

Thompson's argument that the district court applied the Guidelines incorrectly is premised upon his interpretation of this Court's decision in United States v. Kopp, supra. Kopp involved a defendant who made fraudulent representations to obtain a $13,750,000 bank loan. Kopp pled guilty to procuring a loan by fraudulent misrepresentations, in violation of 18 U.S.C. § 1344. 921 F.2d at 522. At sentencing, the district court applied the fraud and deceit provisions of U.S.S.G. § 2F1.1(b)(1).[5] Section 2F1.1 determines the sentence by reference to the measurable "loss" that results from the fraud and deceit.

_____

[5]. Section 2F1.1 (Fraud and Deceit) of the Sentencing Guidelines provides, in relevant part, that:

. . . .

Although it was uncontroverted that Kopp made fraudulent representations to obtain the loan, he did offer the bank a deed as collateral. The bank ultimately sold the property for $14,500,000, $750,000 more than the face value of the loan. Id. at 524. Nonetheless, the district court calculated the "loss" under §2F1.1(b)(1) at $13,750,000, the full face value of the loan. We vacated the judgment and sentence of the district court, holding that in fraudulent loan application cases "the loss is the amount of loss not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from the assets pledged to secure the loan." Id. at 535.

Kopp is clearly distinguishable from the present case. As contrasted with Kopp, the present appeal concerns the application of Sentencing Guideline § 2S1.1(b)(2) not § 2F1.1(b)(1). Section 2S1.1(b)(2) computes the base level according to the "value of the funds" involved in the money laundering scheme, not according to the "loss" incurred. As the Tenth Circuit has held, when considering the impact of fraud on individual victims it is the loss which governs the measure of

(..continued)
(b)(1) If the loss exceeded $2,000, increase the offense level as follows:

    . . . .
    (A)  $2,000 or less               no increase
    . . . .
    (S)  More than $80,000,000    add 18

the sentence imposed, whereas in considering a money laundering offense such as the one here, the amount of the loss is not the measure of the sentence. Rather, it is the value of the funds involved in the money laundering transaction. This is so because "[t]he harm from such a transaction does not generally fall upon an individual, but falls upon society in general. Thus, the measure of harm under § 2S1.1 is the total amount of the funds involved." United States v. Johnson, 971 F.2d 562, 576 (10th Cir. 1992).

Although the Commentary to § 2S1.1 does not expressly define "the value of the funds," it states that "[t]he amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided in the enterprise." The Commentary to § 2S1.1 makes no reference to "loss" and contains no cross-references to § 2F1.1. The Commentary's statement that the "amount of money involved is included as a factor" can only refer to the "value of the funds" language of § 2S1.1(b)(2). The Commentary's reference to "the amount of funds involved" in the money laundering scheme and § 2S1.1(b)(2)'s reference to "the value of the funds" hence should be read synonymously.

It is uncontroverted that Thompson deposited $352,220.50 in laundered funds in PNC Bank in violation of 18 U.S.C. §1956. The sum of $352,220.50 is plainly the "amount of

money involved" in this case and gives the clearest "indicator of the magnitude of the criminal enterprise."

The Money Laundering Control Act's[6] ("the Act") reference to "value" also supports our interpretation of "the value of the funds" under § 2S1.1(b)(2). Among other things, the sentencing provisions of that Act permit a district court to impose a sentence of "twice the value of the property involved in the transaction." Under 18 U.S.C. § 1956 (c)(3), "The term `transaction' . . . with respect to a financial institution includes the deposit, withdrawal, transfer between accounts . . . through, or to a financial institution, by whatever means effected." These are the very acts to which Thompson pled guilty. Nowhere in the Act does the term "loss" appear.

The provisions of the Act to which we have referred look only to the value of the laundered funds that were transacted by and through a financial institution. Neither the Act nor U.S.S.G. § 2S1.1(b)(2) provide for any mitigation of punishment if the victims of the money laundering scheme recoup some, or even all, of their losses. Accordingly, we hold that the calculation of "the value of the funds" under § 2S1.1(b)(2) includes the aggregate of all funds involved in the money laundering scheme without regard to either the "actual loss" which the victim suffered or the return of any monies to the victims. In the instant case, the district court determined that

---

[6]. 18 U.S.C. §§ 1956-57.

the value of the funds involved in Thompson's unlawful activities was $352,220.50.

Our reading and our interpretation of the money laundering and fraud provisions of the Guidelines is consistent with that of other courts that have addressed this issue. Every Court of Appeals that has reviewed sentences imposed under U.S.S.G. § 2S1.1(b)(2) and discussed sentences imposed under U.S.S.G. § 2F1.1(b)(1) has held that "value of funds" under § 2S1.1 is not limited to or the same as the concept of "loss", which is the measure of culpability found in § 2F1.1. See United States v. Johnson, 971 F.2d 562, 576 (10th Cir. 1992); United States v. Taylor, 984 F.2d 298, 303 (9th Cir. 1993); United States v. Tansley, 986 F.2d 880, 884 (5th Cir. 1993); United States v. Barrios, 993 F.2d 1522, 1524 (11th Cir. 1993).

Because we reject Thompson's contention that § 2S1.1(b)(2)'s reference to "the value of the funds" relates to the actual loss suffered by victims of the money laundering scheme, we will affirm the district court's sentence of May 25, 1994 imposed upon Thompson.