[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-10676

_____

D. C. Docket No. 01-00186-CR-BAE-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLARENCE L. MARTIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(February 6, 2003)**

Before TJOFLAT and BLACK, Circuit Judges, and GOLDBERG[*], Judge.

PER CURIAM:

_____

[*] Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Appellant Clarence Martin appeals his conviction and sentence on 133 counts of various financial crimes, including 97 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  Appellant raises several issues on appeal,[1] but only one merits discussion:  whether the district court properly calculated the "value of the funds" under U.S.S.G. § 2S1.1 (1998) in determining Appellant's offense level at sentencing.  For the reasons that follow, we affirm.

I.

Appellant's convictions arise out of two stolen checks which were deposited into bank accounts controlled by Appellant.  The first of these checks was in the amount of $380,050.08 and was deposited into an attorney trust account maintained by Appellant at Wachovia Bank.  Within six days of the funds becoming available for withdrawal, Appellant wrote a total of nine checks from this account in the amount of $380,003.21.  Appellant then used those nine checks to obtain cash or to purchase cashier's checks and certificates of deposit for his wife, his children, his secretary, International Rimstrance Diversified Group (a

---

[1] Appellant also argued the district court erred by:  (1) refusing to allow Appellant to impeach a Government witness with a prior inconsistent statement; (2) allowing the Government to present a money laundering expert while denying Appellant's motion for authority to retain a money laundering expert; (3) failing to grant a continuance to allow Appellant to develop evidence by a handwriting expert; and (4) admitting similar acts evidence under Federal Rule of Evidence 404(B).  We affirm without discussion the district court's rulings on these issues. *See* 11th Cir. R. 36-1.

holding company in which Appellant was CEO), himself, and others. For example, Appellant would obtain checks at one branch of Wachovia and cash those checks on the same day at other branches.

The indictment identified 97 separate monetary transactions flowing from the $380,050.08 check. These transactions constituted the 97 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Since proceeds from the check went through more than one transaction, the 97 money laundering transactions totaled $1,055,068.21, even though the original amount of the stolen check was $380,050.08.

In calculating the "value of the funds" under U.S.S.G. § 2S1.1 (1998), the court added each money laundering transaction together for a total of $1,055,068.21 and correspondingly increased Appellant's offense level by 5 levels. Appellant argues this was error and the maximum amount he could have laundered was the $380,050.08 from the first stolen check.

## II.

Although a determination of the facts concerning the amount of money involved in a laundering scheme is reviewed for clear error, the district court's interpretation of the Sentencing Guidelines is subject to *de novo* review. *United States v. Barrios*, 993 F.2d 1522, 1524 (11th Cir. 1993).

Section 2S1.1(a) of the 1998 Sentencing Guidelines[2] provides a base offense level of 20 for money laundering convictions under § 1956(a)(1)(B)(i).  Section 2S1.1(b) provides for increases in the base offense level for specific offense characteristics, including the amount of money laundered.  Under § 2S1.1(b)(2)(F), if the "value of the funds" is more than $1,000,000, but less than $2,000,000, the defendant's offense level is increased 5 points.  The commentary to § 2S.1.1 states, "The amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise."

In this case, the district court calculated the "value of the funds" by adding together the 97 different monetary transactions for which Appellant was convicted.  Since all of these transactions flowed from the $380,050.08 check, Appellant argues the total amount of money laundered could not exceed $380,050.08.  Under Appellant's theory the "value of the funds" necessarily means the amount of money originally injected or infused into the money laundering scheme.  We disagree.

---

[2]  The district court applied the November 1, 1998 edition of the Sentencing Guidelines.  On November 1, 2001, after Appellant committed the money laundering offense, but before Appellant was sentenced, § 2S1.1 was substantially amended. *See infra* note 3.  Neither the Government nor Appellant argues the amended version of the Guidelines should apply.

Although we have not directly addressed this issue, our previous decisions have not strictly limited the "value of the funds" to the money originally infused into the money laundering scheme. In *Barrios*, we addressed whether a district court could include legitimate interest earned on illegitimate drug proceeds in determining the "value of the funds" under § 2S1.1(b)(2). 993 F.2d at 1523-24. Barrios laundered $595,000 of drug proceeds by sending the money to a co-conspirator, who deposited the money in a number of bank accounts and subsequently issued ten checks to Barrios totaling $674,416.33, the difference representing earned interest. *Id.* We held the district court properly included the earned interest in calculating the "value of the funds" under § 2S1.1(b)(2). *Id.* at 1524. "While the Guidelines do not define the term funds as used in § 2S1.1(b)(2), this Court previously has stated that in sentencing under this section, the district court is 'required to consider the total amount of funds that it believed was involved in the course of criminal conduct.'" *Id.* (quoting *United States v. De La Rosa*, 922 F.2d 675, 679 (11th Cir. 1991)). "[T]his term 'obviously refer[s] to funds that are used by the defendant in an unlawful monetary transaction.'" *Id.* (quoting *United States v. Johnson*, 971 F.2d 562, 575 (10th Cir. 1992)).

Like Appellant, the defendant in *United States v. Li*, 973 F. Supp. 567 (E.D. Va. 1997), argued the court should consider only the money injected or infused

into the money laundering conspiracy, and not the total amount of funds involved in each unlawful monetary transaction. The Eastern District of Virginia rejected this argument, stating defendant's "method of calculating the value of funds is unsound and does not accurately measure the 'magnitude of the criminal enterprise.'" *Id.* at 574.

> According to [defendant's] theory, coconspirators unlawfully transferring $100 a hundred times through a hundred different accounts should be treated the same as coconspirators unlawfully transferring $100 once through one account. Similarly, under his theory, a criminal enterprise that unlawfully transferred $100 once has a greater "magnitude" than a criminal enterprise that unlawfully transferred $99 a hundred times through a hundred different accounts. It does not make sense to look only at the amount of capital injected or infused into the money laundering scheme, as [defendant] suggests, and ignore what happens to that capital. Clearly, the "magnitude of the criminal enterprise" is larger for a conspiracy involving a hundred unlawful transfers of $100 or $99 compared to a conspiracy involving one unlawful transfer of $100.

*Id.*

The *Li* court's reasoning is consistent with the purpose of the concealment or design provision of the money laundering statute, 18 U.S.C. § 1956 (a)(1)(B)(i). This section was designed to punish defendants who, after the completion of the underlying specified unlawful activity, "take the additional step of attempting to legitimize their proceeds so that observers think their money is derived from legal enterprises." *United States v. Majors*, 196 F.3d 1206, 1212 (11th Cir. 1999). "The

6

activity that Section 1956(a)(1)(B)(i) seeks to prevent is the injection of illegal proceeds into the stream of commerce while obfuscating their source." *Id.* at 1212 n.12. Significantly, money laundering is not a continuing offense–"each transaction or transfer of money constitutes a separate offense." *Id.* at 1212 n.14 (citing *United States v. Kramer*, 73 F.3d 1067, 1072 (11th Cir. 1996)).

Unlike the 1998 Sentencing Guidelines for theft or fraud, which compute the offense level according to the "loss" incurred by the victim, *see* U.S.S.G. §§ 2B1.1(b)(1), 2F1.1(b)(1), the 1998 Sentencing Guidelines for money laundering compute the base offense level according to the "value of the funds," U.S.S.G. § 2S1.1(b)(2). "This is so because '[t]he harm from such a transaction does not generally fall upon an individual, but falls upon society in general.'" *United States v. Thompson*, 40 F.3d 48, 51 (3d Cir. 1994) (citation omitted). Each unlawful monetary transaction harms society by impeding law enforcement's efforts to track ill-gotten gains. *See United States v. Allen*, 76 F.3d 1348, 1369 (5th Cir. 1996).

By adding together the individual transactions for which Appellant was convicted, the district court's calculation accurately reflected the scope of the criminal enterprise because each of the 97 money laundering counts constituted a separate harm to society by further impeding law enforcement's efforts to track the

ill-gotten gains.  Therefore, we conclude the district court did not misinterpret "the value of the funds" under § 2S1.1 of the 1998 Sentencing Guidelines. [3]

AFFIRMED.

---

[3] On November 1, 2001, the Sentencing Guidelines for money laundering were amended substantially.  The "value of the funds" is no longer used as a specific offense characteristic. Instead, the base offense level for money laundering is determined by reference to the underlying offense from which the laundered funds were derived or by reference to the chart in § 2B1.1 corresponding to the "value of the laundered funds."  U.S.S.G. § 2S1.1(a).  Additionally, under the 2001 Guidelines, a defendant's base offense level is increased 2 levels for "sophisticated laundering," such as two or more levels (i.e. layering) of transactions. U.S.S.G. § 2S1.1(b)(3) & cmt. n.5 (2001).  The 1998 Guidelines do not contain a similar provision regarding sophisticated laundering.

This case only involves the interpretation of "value of the funds" in § 2S1.1(b)(2) of the 1998 Guidelines.  Given the substantial changes to the money laundering provisions, our holding today does not apply to the "value of the laundered funds" in § 2S1.1(a)(2) of the 2001 Guidelines.  In other words, although the district court properly aggregated the funds from layered transactions in determining the "value of the funds" under § 2S1.1(b)(2) of the 1998 Guidelines, it might be improper for a district court to do so when determining the "value of the laundered funds" under § 2S1.1(a)(2) of the 2001 Guidelines because § 2S1.1(b)(3) of the 2001 Guidelines provides for a two level increase for "sophisticated laundering."