SUMMARY ORDER
UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the United States District Court for the Northern District of New York (Scullin, J.) is AFFIRMED IN PART and REMANDED IN PART.
Defendants-appellants/cross-appellees Charles H. Barber (“Charles H.”), Helen J. Barber (“Helen”), and Charles M. Barber (“Charles M.”) appeal from the August 15, 2002 judgment of the United States District Court for the Northern District of New York. We presume the parties’ familiarity with the factual and procedural background of this case and the issues raised on appeal.
First, all three defendants challenge the portion of the jury instructions containing a “conscious avoidance” charge as given with respect to Counts Two through Seven, the wire fraud counts brought against Charles H. and Charles M.[1] Because the defendants did not object to the instruction at trial, we review the propriety of the jury instruction for plain error. United States v. Schultz, 333 F.3d 393, 413 (2d Cir.2003); see also Fed.R.Crim.P. 52(b). “[I]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.” United States v. Bruno, 383 F.3d 65, 79 (2d Cir.2004) (internal quotation marks and citation omitted).
A district court must, in giving a conscious avoidance charge, “instruct the jury that knowledge of the existence of a particular fact-is established (1) if a person is aware of a high probability of its existence, (2) unless he actually believes that [the fact] does not exist.” Schultz, 333 F.3d at 413 (quoting United States v. Feroz, 848 F.2d 359, 360 (2d Cir.1988) (per curiam)). The district court clearly erred in omitting the “high probability” language in its conscious avoidance charge. Cf. Feroz, 848 F.2d at 361 (“By now our message should be clear: the prosecutor should request that the ‘high probability’ and ‘actual belief language be incorporated into every conscious avoidance charge.”). While the omission of the “high probability language” from the conscious avoidance charge was erroneous, defendants have failed to show that the error affected their “substantial rights” because they have not demonstrated that the error was prejudicial or affected the outcome of the proceedings. See United States v. Keigue, *893 318 F.3d 437, 442 (2d Cir.2003). Nor have defendants demonstrated that the error affected the fairness, integrity, or public reputation of judicial proceedings. See United States v. Zillgitt, 286 F.3d 128, 140 (2d Cir.2002). The main thrust of defendants’ defenses at trial was that they did not intend to defraud creditors, the trustees or the bankruptcy court because their financial transactions aimed to undertake innocent business ventures and protect assets belonging solely to Helen Barber. Reading the charge as a whole, we hold that the defendants have not demonstrated that the jury was misled on either the necessary mens rea for conviction or the defendants’ good faith defenses. See Schultz, 333 F.3d at 413-14 (“We do not review a jury instruction to determine whether it precisely quotes language suggested by Supreme or Appellate Court precedent. Instead, we review the court’s instructions to determine whether ‘considered as a whole, [the instructions] adequately communicated [the essential] ideas to the jury.’ ” (citation omitted) (alterations in original)). Finally, the evidence of the defendants’ guilt was overwhelming and therefore the error cannot be considered prejudicial. See United States v. Gabriel, 125 F.3d 89, 98-99 (2d Cir.1997) (holding that potential error in conscious avoidance jury charge did not amount to plain error because defendants did not show prejudice).
Second, Charles H. and Charles M. argue that insufficient evidence existed to support their convictions for conversion of government funds and wire fraud in violation of 18 U.S.C. §§ 641 and 1341. When reviewing a conviction for alleged insufficiency of evidence, “we view the evidence in the light most favorable to the government and construe all possible inferences in its favor,” United States v. Puzzo, 928 F.2d 1356, 1361 (2d Cir.1991) (citations and internal quotation marks omitted), and must “defer to the jury’s determination of the weight of the evidence and the credibility of the witnesses, and to the jury’s choice of the competing inferences that can be drawn from the evidence.” United States v. Ceballos, 340 F.3d 115, 124 (2d Cir.2003) (citation and internal quotation marks omitted); see also Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (holding that a jury’s verdict must be upheld if “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt”). Construing all of the evidence in the light most favorable to the government, a rational trier of fact assessing the totality of the evidence could have found that Charles H. and Charles M. possessed the specific intent to defraud the government by misappropriating the funds obtained from the Department of Housing and Urban Development (HUD). The Barbers told a Chase loan officer that they intended to use the funds from the HUD loan to repay the existing AMG loan at Chase and repaid the AMG loan immediately upon the receipt of the HUD funds. Moreover, the Barbers did not inform town officials or professional advisors that, contrary to HUD regulations, they spent the loan money well prior to the disbursement of the funds. They also submitted postdated false receipts with inflated prices for purchases they claimed to have made pursuant to the HUD loan, but that were actually completed years beforehand. Taken together, these facts provide ample evidence from which the jury could find the defendants guilty beyond a reasonable doubt.
The Barbers also raise several challenges to their sentence enhancements; the government cross-appeals certain downward departures made by the district court. The defendants and the government concede that the defendants’ sen *894 tences must be remanded in accordance with United States v. Booker, — U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir.2005). We nonetheless address the issues raised on appeal in order to assist the district court in fulfilling its obligations under Crosby. See, e.g., United States v. Rubenstein, 403 F.3d 93, 99 (2d Cir.2005).
First, defendants contend that the imposition of the obstruction of justice enhancement under U.S.S.G. § 3C1.1 to their fraud convictions constituted impermissible double counting for two reasons: first, assuming that the enhancement was based on false statements, such conduct is inherent in the offense of bankruptcy fraud, and second, they also received a two-level enhancement under U.S.S.G. § 2Fl.l(b)(4)(B) (1998) for a fraud offense involving any judicial order or process. The district court, however, sentenced the defendants based on the Guidelines calculation for the money laundering offense instead of the fraud offenses and never applied an enhancement under U.S.S.G. § 2Fl.l(b)(4)(B) to the money laundering calculation. We note that the district court’s failure to specify which conduct formed the basis for its finding of obstruction would compromise our ability to review the propriety of this enhancement and to determine whether it constituted impermissible double counting. Cf. United States v. Amato, 46 F.3d 1255, 1263-64 (2d Cir.1995) (holding that district court’s failure to specify basis for obstruction of justice enhancement, where enhancement could have been based on multiple distinct grounds, warranted remand for factual findings).
Second, the Barbers argue that the loss amount of $370,000 for theft of government funds under U.S.S.G. § 2Bl.l(b)(l) with respect to the HUD fraud should not have included a $95,000 grant designated for working capital because the theft of government funds conviction and related wire fraud convictions were premised on misrepresentations made with respect to the equipment purchases. Again, the HUD loan fraud amount was not part of the district court’s calculation of the sentencing range as the court based the offense level on the financial transactions that occurred during the money laundering conspiracy, not on the HUD fraud. We note, however, that to the extent the fraud charges would have affected the defendants’ securing of the entire loan from HUD, defendants’ arguments would have no basis in that the fraud would have occasioned a loss in the total sum of the loan.
Third, Charles H. argues that the amount of loss and the value of funds laundered that was attributed to him should not have included the $400,000 that his parents deposited in a Canadian bank because the transfer of these funds by his parents was antecedent to his involvement with later transfers. As such, he argues that the $400,000 transfer could not have been “reasonably foreseeable to him” under U.S.S.G. § lB1.3(a)(l), which determines the offense level “in the case of jointly undertaken criminal activity ... [on the basis of] all reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity.” We have assumed that, in some instances, a defendant may be responsible for activity that occurred among co-conspirators prior to the defendant’s joining the conspiracy. See United States v. Miranda-Ortiz, 926 F.2d 172, 178 (2d Cir.1991) (“The late-entering coconspirator should be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the conspiracy, he could reasonably foresee the distributions of future amounts, or knew or reasonably should have known *895 what the past quantities were.” (emphasis added)); but see United States v. Carreon, 11 F.3d 1225, 1235 (5th Cir.1994); United States v. O’Campo, 973 F.2d 1015, 1026 (1st Cir.1992). Although we do not now resolve the exact meaning of reasonable foreseeability, we have stated that findings of fact by a sentencing court on issues of knowledge and foreseeability are particularly helpful when “the defendant’s connection with the conspiracy was temporally limited,” United States v. Negron, 967 F.2d 68, 72 (2d Cir.1992) (citing Miranda-Ortiz, 926 F.2d at 177-78), and urge the district court on remand to articulate Charles H.’s connection to the initial $400,000 cash transaction.
Fourth, the defendants argue that the district court overstated the value of the funds in the money laundering conspiracy by including the value of the funds that were repeatedly transferred between bank accounts. Our Court has not addressed this precise issue nor will we do so now. Cf. United States v. Fagans, 406 F.3d 138, 140-41 (2d Cir.2005) (“If the issue concerning the correctness of a Guidelines calculation is difficult, an appellate court might understandably prefer not to resolve the issue upon an initial appeal of a pre-Booker sentence and instead to remand.... ”). We recognize the fact that the Eleventh Circuit in United States v. MaHin, 320 F.3d 1223 (11th Cir.2003) (per curiam) rejected defendants’ position, as well as the fact that the phrase “value of funds” could also be read differently than done so by MaHin. We urge the district court to give this issue closer scrutiny upon remand if the issue affects its sentence.
On cross-appeal, the government also challenges two of the district court’s sentencing determinations. First, the government argues that the district court erred in granting a downward departure for aberrant behavior under U.S.S.G. § 5K2.20. The 1998 version of the Sentencing Guidelines, under which the Barbers were sentenced, does not specifically provide for departures based on aberrant behavior; downward departures on the basis of aberrant behavior were recognized only in the November 2000 amendment of U.S.S.G. § 5K2.20. Cf. United States v. Gonzalez, 281 F.3d 38, 40, 44-45 (2d Cir.2002). We find that the downward departure was likely unwarranted under both the amended U.S.S.G. § 5K2.20 and our prior case law concerning this departure. We agree with the government that the Barbers’ offenses, which spanned the better part of a decade and required sophisticated financial forethought, were not of limited duration and involved significant planning. See United States v. Castellanos, 355 F.3d 56, 60 (2d Cir.2003) (affirming district court’s finding that drug defendant had engaged in “significant planning” meriting denial of downward departure for aberrant behavior where defendant “had a week’s notice of the crime and therefore plenty of time to consider whether to participate” and was carrying cash to purchase drugs at time of her arrest). Moreover, the defendants failed to demonstrate an exceptional record of good works or any attempt to mitigate the loss from their criminal misdeeds. Cf. United States v. May, 359 F.3d 683, 692 (4th Cir.2004) (holding that “singing in a chorale and getting along with coworkers are insufficient to render [defendant’s] case exceptional”); United States v. Pierson, 121 F.3d 560, 564-65 (9th Cir.1997) (holding that “an absence of criminal history is not synonymous with aberrant behavior” and “a defendant’s exemplary life prior to his criminal involvement does not, by itself, justify a departure for aberrant behavior”).
Second, the government argues that the district court erred in granting Helen Barber a three-level reduction in *896 her offense level under U.S.S.G. § 3B1.2 on the basis that her role in the offenses was minor to minimal. In determining whether to adjust a criminal defendant’s sentence under U.S.S.G. § 3B1.2, “a district court looks to factors such as the nature of the defendant’s relationship to other participants, the importance of the defendant’s actions to the success of the venture, and the defendant’s awareness of the nature and scope of the criminal enterprise.” United States v. Ravelo, 370 F.3d 266, 269-70 (2d Cir.2004) (citation and internal quotation marks omitted).. “An adjustment for a defendant’s minor role under U.S.S.G. § 3B1.2(b) is warranted only if the defendant is ‘substantially less culpable than the average participant.’ ” Id. at 269 (internal quotation marks and citation omitted). We agree with the government’s contention that Helen’s role was not as minor or minimal as the district court described. Helen’s participation in the crimes included traveling to Montreal to open a Bahamian bank account with her husband; serving as an officer of AMG at the time of the bankruptcy filing and as an officer of CHIMO; making transfers of funds that were ultimately laundered or concealed; and registering assets in her name to conceal them from bankruptcy creditors. Even if Helen did not plan the criminal venture, it is difficult to characterize her role in the scheme as merely tangential or ancillary, particularly when the defense to the criminal enterprises at issue centered around her claimed attempts with her son and husband to protect her assets. Cf. Ravelo, 370 F.3d at 270 (affirming district court’s denial of a minor role adjustment for defendant gang member who lied about witnessing a gang murder that occurred during a gang shoot-out, on the basis that defendant “was a member of a gang, knew the gang was going to attack a rival gang, supplied a car, and provided support by his presence as a passenger in the car, even if he did not commit or intend to commit the assault himself,” and stating that mere fact that defendant did not “conceive the crime ... [did] not show that he was substantially less culpable than the average participant”) (citation and internal quotation marks omitted).
Moreover, the mere fact that Helen’s participation in the scheme may have been less extensive than that of her husband and son does not alone provide a basis for a downward departure under U.S.S.G. § 3B1.2(b). See United States v. Carpenter, 252 F.3d 230, 235-36 (2d Cir.2001) (stating that “the fact that a defendant played a minimal or minor role in his offense vis-a-vis the role of his co-conspirators is insufficient, in and of itself, to justify a [mitigating role] reduction” and holding that district court erred in granting U.S.S.G. § 3B1.2(b) adjustment for defendant solely on the basis that he was less culpable than his co-conspirator) (citation and internal quotation marks omitted) (alteration in original); United States v. Castano, 234 F.3d 111, 113 (2d Cir.2000) (“We have held that a defendant may not receive a minor role adjustment solely because she ‘played a lesser role than [her] co-conspirators; to be eligible for a reduction, the defendant’s conduct must be ‘minor’ ... as compared to the average participant in such a crime.” (citations omitted) (alterations and omissions in original)).
In light of the Supreme Court’s opinion in United States v. Booker, — U.S.-, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we remand this case to the district court for proceedings consistent with our decision in United States v. Crosby, 397 F.3d 103 (2d Cir.2005). Any appeal taken from the district court following this remand can be initiated only by filing a new notice of appeal. See Fed. R.App. P. 3, 4(b).
We have considered defendants’ remaining arguments and find them to be without *897 merit. For the foregoing reasons, the judgment of the district court is AFFIRMED IN PART and REMANDED IN PART for proceedings consistent with Booker, Crosby and this order.

. While Helen was not charged with wire fraud, she argues that errors in the jury charge on wire fraud infected the portions of the jury charge relating to counts for which she was actually charged.'