[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 13, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11225
Non-Argument Calendar

_____

D. C. Docket No. 03-00033-CR-5-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID E. MARTINELLI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 13, 2008)**

Before BARKETT, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

This is David E. Martinelli's second appeal from his 210-month sentence for

conspiracy to commit money laundering, a violation of 18 U.S.C. § 1956(a)(1) and

(h).  We previously affirmed Martinelli's conviction but vacated and remanded for resentencing in light of United States v. Booker, 543 U.S. 220 (2005).  See United States v. Martinelli, 454 F.3d 1300 (11th Cir. 2006), cert. denied, 127 S.Ct. 1846 (2007).  On remand, the district court again imposed a 210-month sentence.  In this appeal, Martinelli argues that the district court: (1) erred in calculating the "value of the funds," for purposes of U.S.S.G. § 2S1.1(b)(2), because it failed to determine the actual amount that was laundered; (2) erred in its application of U.S.S.G. § 3B1.1(a) because it considered all of the fraud-related acts, but there was no evidence that Martinelli was the leader or organizer of an extensive money laundering offense; and (3) imposed an unreasonable sentence and failed to adequately consider his age.  After thorough review of the record, we affirm.

Martinelli first argues that the district court erred in calculating the money laundering amount for purposes of U.S.S.G. § 2S1.1.  Martinelli contends that the court "simply used all the money obtained by the company (that is, all the fraudulently obtained money) and treated it as all laundered money."  According to Martinelli, a considerable amount of the company's receipts was used legitimately by the company.  Martinelli argues that his guidelines calculation would have been lower if the court calculated the actual amount of money laundered, and it was error for the court to use the fraud loss amount.  According to Martinelli, although

the current version of § 2S1.1 is inapplicable for ex post facto reasons, it defines "laundered funds" as funds involved in the violation of 18 U.S.C. §§ 1956 or 1957. In his reply brief, Martinelli contends that the government failed to meet its burden of showing how much money was laundered, and there was no "relevant conduct" to consider.

We review "the district court's determination of the facts concerning the amount of money involved in a money laundering scheme only for clear error." United States v. Paley, 442 F.3d 1273, 1276 (11th Cir. 2006) (interpreting the post-2001 version of § 2S1.1). We review "the district court's interpretation of the sentencing guidelines de novo." Id. "We will reverse the district court only if any error was harmful." United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

Pursuant to the 2000 version U.S.S.G. § 2S1.1,[1] the defendant should be assigned a base offense level of 23 if he was convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A). U.S.S.G. § 2S1.1(a)(1) (2000). "Section 2S1.1(b) provides for increases in the base offense level for specific offense characteristics, including the amount of money laundered." United States v. Martin, 320 F.3d 1223, 1225-26 (11th Cir. 2003) (interpreting the pre-2001 version of § 2S1.1). Eight levels should be added where the "value of the funds" exceeds

---

[1] The district court applied the November 1, 2000 edition of the Sentencing Guidelines, and Martinelli concedes that the 2000 version of the Guidelines is applicable to his case.

$6 million. U.S.S.G. § 2S1.1(b)(2)(I) (2000). "The commentary to § 2S1.1 states, 'The amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise.'" Martin, 320 F.3d at 1226.

In determining the "value of the funds," "the district court is 'required to consider the total amount of funds that it believed was involved in the course of criminal conduct.'" United States v. Barrios, 993 F.2d 1522, 1524 (11th Cir. 1993) (citation omitted) (holding that legitimate interest earned could be used to calculate the value of the funds for purposes of the pre-2001 version of § 2S1.1). "The 'value of the funds' involved in a money laundering offense is identified by § 2S1.1(b)(2) as a 'Specific Offense Characteristic' and, therefore, sentencing under that section necessarily must take into account 'all acts and omissions committed . . . by the defendant . . . during the commission of the offense.'" Id. (quoting U.S.S.G. § 1B1.3(a)(1)(A)). We have noted that "funds" "obviously refer[s] to funds that are used by the defendant in an unlawful monetary transaction." Id. (citation omitted).

On November 1, 2001, § 2S1.1 was substantially amended. We discussed the 2001 amendment in Martin, 320 F.3d at 1227 n.3:

> The 'value of the funds' is no longer used as a specific offense characteristic. Instead, the base offense level for money laundering is

4

determined by reference to the underlying offense from which the laundered funds were derived or by reference to the chart in § 2B1.1 corresponding to the 'value of the laundered funds.' U.S.S.G. § 2S1.1(a). Additionally, under the 2001 Guidelines, a defendant's base offense level is increased 2 levels for 'sophisticated laundering,' such as two or more levels (i.e. layering) of transactions. U.S.S.G. § 2S1.1(b)(3) & cmt. n. 5 (2001). The 1998 Guidelines do not contain a similar provision regarding sophisticated laundering.

Id. The term "laundered funds" is defined in the 2001 amendment as "the property, funds, or monetary instrument involved in the transaction, financial transaction, monetary transaction, transportation, transfer, or transmission in violation of 18 U.S.C. § 1956 or § 1957." U.S.S.G. § 2S1.1 cmt. n.1.

As an initial matter, Martinelli does not challenge the district court's finding that $6.6 million was fraudulently obtained by the company, even though he contested that figure at the first sentencing hearing. Martinelli also argued in the district court that the "ceiling"amount the court could consider was the jury's determination of the $4.4 million forfeiture amount, but he fails to reassert that argument on appeal. Therefore, he has abandoned those issues. United States v. Levy, 416 F.3d 1273, 1275 (11th Cir. 2005) ("issues not raised in a party's initial brief are deemed abandoned and generally will not be considered by this Court").

The district court did not clearly err in calculating the "value of the funds" for purposes of § 2S1.1(b)(2). In its application of the 2000 version of the Guidelines, the court was required to determine the "value of the funds," not the

amount of "laundered funds." Thus, the record supports the court's finding that the value of the funds was $6.1 million because that amount took into account all acts and omissions committed by Martinelli during the commission of the offense, and the entire amount was undisputedly involved in the course of the criminal conduct.

Martinelli next argues that the district court erred by enhancing his sentence under U.S.S.G. § 3B1.1(a) because it confused the underlying fraud offense with the money laundering offense of which he was convicted. He contends that his conduct in committing the underlying fraud offense was not "relevant conduct" in the money laundering guideline. Martinelli does not challenge that he was leader of the company or that he was responsible for his employees who fraudulently obtained money for the company. He also does not dispute that the fraud offense was "otherwise extensive." However, according to Martinelli, there was no proof that he managed anyone during the course of the money laundering offense, nor was there evidence that the money laundering offense was "otherwise extensive."

A district court's decision to enhance a defendant's offense level based on a leadership role under U.S.S.G. § 3B1.1 is a finding of fact reviewed only for clear error. United States v. Phillips, 287 F.3d 1053, 1055 (11th Cir. 2002). "The government bears the burden of proving by a preponderance of the evidence that the defendant had an aggravating role in the offense." United States v. Yeager,

6

331 F.3d 1216, 1226 (11th Cir. 2003).

The Guidelines allow for a four-level increase to the defendant's offense level if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The Guidelines further direct that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct)." Id., introductory cmt. "Relevant Conduct" includes:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1). "[T]he focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator." Id., cmt. n.1.

"To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2. A "participant" is "a person who is

7

criminally responsible for the commission of the offense, but need not have been convicted." Id., cmt. n.1. In deeming an organization to be "otherwise extensive," "all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." Id., cmt. n.3.

The factors a court should consider in determining a leadership and organizational role include:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § 3B1.1 cmt. n.4.

Because Martinelli does not contest that he was the leader or organizer of the extensive fraud offense, the only issue to decide is whether his conduct as a leader or organizer in the fraud offense is "relevant conduct" in determining his role in the offense for his money laundering conviction. The district court did not clearly err in applying the U.S.S.G. § 3B1.1(a) enhancement based on Martinelli's role in the money laundering offense. Even though Martinelli was not convicted for the underlying fraud offense, he was accountable for those acts because the acts were

8

committed during the commission of the money laundering offense. Thus, the fraud conduct was "relevant conduct" and the district court properly considered those acts when it determined Martinelli's role in the money laundering offense.

Lastly, Martinelli argues that the 17-year sentence was unreasonable because it amounts to a life sentence given that he is 67 years old, and because Martinelli demonstrated that, by applying the 18 U.S.C. § 3553(a) factors, a 5- or 10-year sentence would be sufficient but no more than necessary to achieve the legitimate goals of sentencing. Thus, Martinelli contends that although his sentence was within the guideline range, it was unreasonable.[2]

In Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court held that appellate courts must undertake a two-part process in reviewing the sentence imposed by the district court. First, the appellate court must determine whether the district court followed proper procedures. Id. at 597. Second, "the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. "In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors." United States v. Thomas, 446 F.3d

---

[2] Martinelli did not address the reasonableness of his sentence in his reply brief, but instead, argued for the first time that the district court erred by: (1) failing to impose restitution; and (2) imposing a fine. However, Martinelli has abandoned these issues because he failed to raise them in his opening brief. See Levy, 416 F.3d at 1276 n.3.

1348, 1351 (11th Cir. 2006).[3] Our "[r]eview for reasonableness is deferential," and "[t]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." Id. (citing United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005)).

We do not "presume reasonable a sentence within the properly calculated Guidelines range." United States v. Campbell, 491 F.3d 1306, 1313 (11th Cir. 2007); see also Rita v. United States, 127 S.Ct. 2456, 2462 (2007) (holding that appellate courts may apply a presumption of reasonableness to a within-guidelines sentence). However, while a sentence within the advisory guidelines range is not per se reasonable, we would ordinarily expect such a sentence to be reasonable. Talley, 431 F.3d at 787-88. Moreover, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

Martinelli failed to establish that his sentence is unreasonable. As for

---

[3] The § 3553(a) factors that a district court must consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1)-(7).

procedural reasonableness, the district court properly considered the advisory guidelines range and noted that the case had been remanded in light of <u>Booker</u>. In fact, Martinelli does not argue that the district court erred in calculating the advisory guidelines, nor that it committed any other procedural error.

As for substantive reasonableness, the district court considered the relevant § 3553(a) factors and articulated its reasons in open court, discussing, among other things, the seriousness of the crime and finding that a lesser sentence would not be just and appropriate under the facts of the case. The court also considered the issues Martinelli raised regarding his age and health. It then sentenced Martinelli to 210 months' imprisonment, which was in the middle of the advisory guidelines range of 188-235 months. The court did not abuse its discretion and impose an unreasonable sentence. Therefore, we affirm.

**AFFIRMED.**